Robert D. Becker (CA Bar No. 160,648)
*rbecker@manatt.com*
Christopher L. Wanger (CA Bar No. 164,751)
*cwanger@manatt.com*
Hilary A. Soloff (CA Bar No. 314,727)
*hsoloff@manatt.com*
MANATT, PHELPS & PHILLIPS, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile:  (415) 291-7474

Charles A. Kertell (CA Bar No. 181,214)
*ckertell@manatt.com*
MANATT, PHELPS & PHILLIPS, LLP
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile:  (714) 371-2550

Attorneys for Defendant,
CAPELLA PHOTONICS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAPELLA PHOTONICS, INC., <br><br> Defendant. | Case No. 3:20-cv-01858-EMC <br><br> **DEFENDANT CAPELLA PHOTONICS, INC.'S ANSWER TO PLAINTIFF CISCO SYSTEMS, INC.'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND COUNTERCLAIMS FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** <br><br> Assigned to: Hon. Edward M. Chen |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC

CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

### ANSWER TO FIRST AMENDED COMPLAINT AND JURY DEMAND

Capella Photonics, Inc. ("Capella") responds to Cisco Systems, Inc.'s First Amended Complaint For Declaratory Relief ("FAC") as follows. Capella responds to the FAC subject to and without waiving defenses. Capella denies the factual allegations and characterizations in the FAC except as expressly admitted herein.

### PARTIES

1. Capella admits that Cisco Systems, Inc. is a California corporation with its principal place of business on Tasman Drive in San Jose, California 95134.

2. Capella admits that Capella is a Delaware corporation, but denies that it has a principal place of business at 5390 Hellyer Ave., San Jose, CA 95138. Capella's principal place of business is currently located at 1100 La Avenida Street, Mountain View, CA 94043.

### JURISDICTION AND VENUE

3. Capella admits that this action is predicated on the patent laws of the United States, Title 35 of the United States Code, with a specific remedy sought based upon the laws authorizing actions for declaratory judgment in the courts of the United States, 28 U.S.C. §§ 2201 and 2202, and that this court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

4. Capella admits that an actual and justiciable controversy exists between Cisco and Capella as to infringement of U.S. Patent No. RE 47,905 ("'905 patent") based on the counterclaim for infringement set forth below. Capella further admits that it filed a previous lawsuit against Cisco alleging infringement of U.S. Patent No. RE 42,368 ("'368 patent"). Capella further admits that certain claims of the '368 patent were cancelled after an Inter Partes Review, that Capella filed U.S. Patent Reissue Application No. 16/023,127 ("'127 application"), and that the '127 application issued as the '905 patent on March 17, 2020. Capella denies the remaining factual allegations of this paragraph 4.

5. Capella admits that it has filed additional suits alleging infringement of the '905 patent against the other manufacturers of ROADM equipment that it previously sued for infringement of the '368 patent, including Ciena Corp. ("Ciena"), Tellabs, Inc. ("Tellabs"), and

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                    1                    CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

1    Fujitsu Network Communications ("Fujitsu").  Capella admits that it alleged in one or more of

2    those suits that "[o]ne or more claims of the '905 patent is substantially identical to one or more

3    claims of the original '368 patent."  Capella admits that Cisco has (and had at the time of filing) a

4    reasonable apprehension that Capella would pursue further litigation against Cisco for

5    infringement of the '905 patent.  Capella denies the remaining factual allegations of this

6    paragraph.

7          6.       Capella admits that an actual and justiciable controversy exists between Cisco and

8    Capella as to infringement of U.S. Patent No. RE 47,905 ("'906 patent").  Capella further admits

9    that it filed a previous lawsuit against Cisco alleging infringement of U.S. Patent No. RE 42,678

10   ("'678 patent").  Capella further admits that certain claims of the '678 patent were cancelled after

11   an Inter Partes Review, that Capella filed U.S. Patent Reissue Application No. 16/023,183 ("'183

12   application"), and that the '183 application issued as the '906 patent on March 17, 2020.  Capella

13   denies the remaining factual allegations of this paragraph.

14         7.       Capella admits that it has filed additional suits alleging infringement of the '906

15   patent against the other manufacturers of ROADM equipment that it previously sued for

16   infringement of the '678 patent, including Ciena Corp. ("Ciena"), Tellabs, Inc. ("Tellabs"), and

17   Fujitsu Network Communications ("Fujitsu").  Capella admits that it has alleged in one or more

18   of those suits that "[o]ne or more claims of the '906 patent is substantially identical to one or

19   more claims of the original '678 patent."  Capella admits that Cisco has (and had at the time of

20   filing) a reasonable apprehension that Capella would pursue further litigation against Cisco for

21   infringement of the '906 patent.  Capella denies the remaining factual allegations of this

22   paragraph.

23         8.       Capella does not contest that this Court has personal jurisdiction over Capella.

24         9.       Capella does not contest venue.

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                    2                    CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

1

**FACTUAL BACKGROUND**

2

**HISTORY REGARDING U.S. PATENT NO. RE 47,905**

3

**AND U.S. PATENT NO. RE 47,906**

4      10.      Capella admits that an actual and justiciable controversy exists between Cisco and

5    Capella as to infringement of the '905 and '906 patents based on the counterclaim for

6    infringement set forth below.  Capella admits that there were a number of filings in the prior

7    actions, and asserts that those filings are of public record and speak for themselves.  Capella

8    denies the remaining factual allegations and characterizations of this paragraph.

9      11.      Capella admits that an actual and justiciable controversy exists between Cisco and

10    Capella as to infringement of the '905 and '906 patents based on the counterclaim for

11    infringement set forth below.  Capella admits that there were a number of filings in the prior

12    actions, and asserts that those filings are of public record and speak for themselves.  Capella

13    denies the remaining factual allegations and characterizations of this paragraph.

14      12.      Capella admits that an actual and justiciable controversy exists between Cisco and

15    Capella as to infringement of the '905 and '906 patents based on the counterclaim for

16    infringement set forth below.  Capella admits that there were a number of filings in the prior

17    actions, and asserts that those filings are of public record and speak for themselves.  Capella

18    denies the remaining factual allegations and characterizations of this paragraph.

19      13.      Capella admits that an actual and justiciable controversy exists between Cisco and

20    Capella as to infringement of the '905 and '906 patents based on the counterclaim for

21    infringement set forth below.  Capella admits that there were a number of filings in the prior

22    actions, and asserts that those filings are of public record and speak for themselves.  Capella

23    denies the remaining factual allegations and characterizations of this paragraph.

24      14.      Capella does not dispute that Cisco continues to make and sell the ONS 15454

25    MSTP products, including the ONS 15454 MSTP containing SMR-C line cards, including the

26    15454-40-SMR1-C line card and the 15454-40-SMR2-C line card (collectively, "the Presently

27    Sold ONS 15454 MSTP Products").  Capella admits that there were a number of filings in the

28

1    prior actions, and asserts that those filings are of public record and speak for themselves.  Capella

2    denies the remaining factual allegations and characterizations of this paragraph.

3        15.    To the extent this paragraph is understood, Capella admits that it seeks damages

4    for infringement of the '905 and '906 patents, and that it previously sought damages for the '368

5    and '678 patents.  Capella admits that there were a number of filings in the prior actions, and

6    asserts that those filings are of public record and speak for themselves.  Capella denies the

7    remaining factual allegations and characterizations of this paragraph.

8        16.    Capella admits that there were a number of filings in the prior actions, and asserts

9    that those filings are of public record and speak for themselves.  Capella denies the remaining

10   factual allegations and characterizations of this paragraph.

11       17.    Capella admits that the Final Written Decisions in the IPRs for Capella's '368 and

12   '678 patents were appealed and the Federal Circuit issued a Rule 36 affirmance.  Capella admits

13   that there were a number of filings in the prior actions, and asserts that those filings are of public

14   record and speak for themselves.  Capella denies the remaining factual allegations and

15   characterizations of this paragraph.

16       18.    Capella admits that it filed reissue applications for the '368 and '678 patents.

17   Capella denies the remaining factual allegations and characterizations of this paragraph.

18       19.    Capella admits that the United States Patent and Trademark Office ("USPTO")

19   issued a Notice of Allowance for the '127 application on November 8, 2019, and that an issue

20   Notification for the '127 application was published by the USPTO on February 26, 2020, stating

21   that the '127 application would result in issuance of U.S. Patent RE 47,905 on March 17, 2020.

22       20.    Capella admits that Claim 23 is an independent claim of the '905 patent.  Capella

23   admits that there were a number of filings in the prior actions, and asserts that those filings are of

24   public record and speak for themselves.  Capella denies the remaining factual allegations and

25   characterizations of this paragraph.

26       21.    Capella denies each and every factual allegation of paragraph 21.

27       22.    Capella understands the factual allegations of paragraph 22 to be argumentative

28   and, on that basis, denies each and every remaining factual allegation and characterization.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
San Francisco

Case No. 3:20-cv-01858-EMC                4               CAPELLA'S ANSWER TO FIRST
                                                           AMENDED COMPLAINT

23.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 23 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

24.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 24 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

25.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 25 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

26.     Capella asserts that the records of the USPTO speak for themselves.  Capella denies the remaining factual allegations of this paragraph.

27.     Capella is without sufficient information to admit or deny that Cisco's 15454-40-SRM1-C, 15454-40-SRM2-C, and 15454-40-WXC-C line cards control a MEMS mirror using the AD5535B DAC.  Capella asserts that the records of the USPTO speak for themselves. Capella denies each and every remaining factual allegation and characterization.

28.     Capella denies each and every factual allegation of paragraph 28.

29.     Capella denies each and every factual allegation of paragraph 29.

30.     Capella is without sufficient information to admit or deny that Cisco's 15454-40-WSS-C and 15454-40-WSS-CE use a Planar Lightwave Circuit and do not contain an array of microelectromechanical system mirrors, and on that basis denies the allegation.  Capella does not dispute that that Cisco's NCS2000-16-WXC-FS line card uses Liquid Crystal on Silicon technology.  Capella is without sufficient information to admit or deny that Cisco's NCS2000-16-WXC-FS line card does not contain an array of microelectromechanical system mirrors.   Capella denies each and every remaining factual allegation and characterization.

31.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 31 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32.     Capella admits that the Final Written Decisions in the IPRs for Capella's '368 and '678 patents were appealed and the Federal Circuit issued a Rule 36 affirmance.  Capella admits that there were a number of filings in the prior actions, and asserts that those filings are of public record and speak for themselves.  Capella denies the remaining factual allegations and characterizations of this paragraph.

33.     Capella admits that it filed reissue applications for the '368 and '678 patents as admitted above.  Capella denies the remaining factual allegations and characterizations of this paragraph.

34.     Capella admits that the USPTO issued a Notice of Allowance for the '183 application on November 8, 2019, and that an issue Notification for the '183 application was published by the USPTO on February 26, 2020, stating that the '183 application would result in issuance of U.S. Patent RE 47,906 on March 17, 2020.

35.     Capella admits that Claim 68 is an independent claim of the '906 patent.  Capella admits that there were a number of filings in the prior actions, and asserts that those filings are of public record and speak for themselves.  Capella denies the remaining factual allegations and characterizations of this paragraph.

36.     Capella denies each and every factual allegation of paragraph 36.

37.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 37 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

38.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 38 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

39.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 39 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

40.     Capella asserts that the records of the USPTO speak for themselves.  Capella understands the remaining factual allegations of paragraph 40 to be argumentative and, on that basis, denies each and every remaining factual allegation and characterization.

41.     Capella asserts that the records of the USPTO speak for themselves.  Capella denies each and every remaining factual allegation and characterization.

42.     Capella is without sufficient information to admit or deny that Cisco's 15454-40-SRM1-C, 15454-40-SRM2-C, and 15454-40-WXC-C line cards control a MEMS mirror using the AD5535B DAC.  Capella asserts that the records of the USPTO speak for themselves. Capella denies each and every remaining factual allegation and characterization.

43.     Capella denies each and every allegation and characterization of paragraph 43.

44.     Capella is without sufficient information to admit or deny that Cisco's 15454-40-WSS-C and 15454-40-WSS-CE use a Planar Lightwave Circuit and do not contain an array of micromirrors, and on that basis denies the allegation.  Capella does not dispute that Cisco's NCS2000-16-WXC-FS line card uses Liquid Crystal on Silicon technology.  Capella is without sufficient information to admit or deny that Cisco's NCS2000-16-WXC-FS line card  does not contain an array of microelectromechanical system mirrors.  Capella denies each and every remaining factual allegation and characterization.

45.     Capella admits that the USPTO issued a notice that the '905 patent and the '906 patent would issue on March 17, 2020. Capella admits that Cisco purports to have filed the instant lawsuit in this Court, the Court in which the Previous Litigation and the Other Previous Lawsuits had been pending.  Capella admits that it filed the Capella 2020 Lawsuits against Fujitsu and Tellabs/Infinera in the Eastern District of Texas and against Ciena in the District of Maryland.

## COUNT I – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF U.S. PATENT NO. RE 47,905

46.     Paragraph 46 does not contain any factual allegation of fact, and, therefore, no answer is required.  Capella incorporates by reference its responses to the above paragraphs as though fully set forth herein.

47.     Capella admits there exists an actual and justiciable controversy regarding the infringement of the '905 patent by Cisco at least because Defendant contends herein that Cisco infringes the '905 patent.  Except as expressly admitted herein, Capella denies the remaining factual allegations and characterizations of this paragraph.

48.     Capella denies each and every factual allegation in paragraph 48.

49.     Capella denies each and every factual allegation in paragraph 49.

## COUNT II – DECLARATORY JUDGMENT OF
## NON-INFRINGEMENT OF U.S. PATENT NO. RE 47,906

50.     Paragraph 50 does not contain any factual allegation of fact, and, therefore, no answer is required.  Capella incorporates by reference its responses to the above paragraphs as though fully set forth herein.  Except as expressly admitted herein, Capella denies the remaining factual allegations and characterizations of this paragraph.

51.     Capella admits there exists an actual and justiciable controversy regarding the infringement of the '906 patent by Cisco at least because Defendant contends herein that Cisco infringes the '905 patent.  Otherwise, denied.

52.     Capella denies each and every factual allegation in paragraph 52.

53.     Capella denies each and every factual allegation in paragraph 52.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

54.     Cisco's claims are barred, in whole or in part, for failure to state a claim for the relief it seeks in the FAC.

### SECOND AFFIRMATIVE DEFENSE – EQUITABLE DEFENSES

55.     Cisco's claims are barred, in whole or in part, under the principals of equity, including laches, waiver, unclean hands and/or estoppel.

### THIRD AFFIRMATIVE DEFENSE – COLLATERAL ESTOPPEL
### AND RES JUDICATA

56.     Cisco's claims are barred, in whole or in part, by the doctrines of collateral estoppel and res judicata.

**PRAYER**

WHEREFORE, Capella prays for judgment against Cisco on the FAC as follows:

1.     That Cisco take nothing by way of its FAC;

2.     That the FAC be dismissed with prejudice;

3.     For Capella's costs incurred in this action;

4.     For Capella's attorneys' fees incurred in this action as allowed by law; and

5.     For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Capella demands a trial by jury on all issues in the FAC triable by jury.

**CAPELLA'S COUNTERCLAIMS**

Capella, by and through its counsel, files these counterclaims for patent infringement and demand for jury trial ("Complaint") against Cisco.  Capella alleges as follows:

**PARTIES**

1.     Capella is a Delaware corporation with a principal place of business at 1100 La Avenida Street, Mountain View, CA 94043.

2.     On information and belief, Cisco Systems, Inc. is a California corporation with its principal place of business on Tasman Drive in San Jose, California 95134.

**JURISDICTION AND VENUE**

3.     This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et. seq.*  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1138(a).

4.     This Court has personal jurisdiction over Cisco in this action because Cisco has filed claims for declaratory relief in this action and has committed acts within this district giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Cisco would not offend traditional notions of fair play and substantial justice.

5.     On information and belief, Cisco, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this district by, among other things, making, selling, offering for sale, and/or importing products and/or services

that infringe the asserted patents, and also through its own use and testing of products and/or services that infringe the asserted patents.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b).  Cisco has committed acts of infringement in this district and has a regular and established place of business in this district.

## FACTUAL BACKGROUND

7.     Founded in 2000, Capella is a pioneer of breakthrough optical switching technologies for use in optical transmission networks.  Those technologies include Dense Wavelength Division Multiplexing (DWDM) transport platforms that include reconfigurable optical add and drop multiplexers (ROADMs).  Capella has designed, developed, produced and sold switching devices for optical transmission networks.  As a result of many years of research and development, Capella has been granted an extensive portfolio of patents, including but not limited to those in suit.

## I.     THE TECHNOLOGY

8.     Optical fiber is used by telecommunications companies to transmit telephone signals, Internet communications, and cable television signals.  Optical fiber is a fast and efficient medium for conducting data in the form of light.  Various wavelengths of light travel along optical fiber at the same time, with each wavelength carrying specific data intended for delivery to a specific location.  An optical fiber is able to carry Internet traffic, cellular communications, and digital television transmissions simultaneously by using different wavelengths of light to carry the data.

9.     Fiber-optics were first developed in the 1970s.  Fiber-optics have revolutionized telecommunications and have played a major role in the development of the Internet.  Because of numerous advantages over electrical transmission, including speed and bandwidth, optical fibers have largely replaced copper wire communications in networks around the world.

10.     As is generally known, the process of communicating using fiber-optics has involved the following basic steps:

a)      creating the optical signal involving the use of a laser transmitter, usually from an electrical signal from a traditional copper based telephone network;

b)      relaying the optical signal along the fiber;

c)      receiving the optical signal at an optical receiver; and

d)      converting the optical signal back into an electrical signal.

11.     Networks using optical fiber span the globe.  Networks on a continent or within a country form a grid.  Line segments of fiber optic cable intersect at hubs or nodes.  At these hubs or nodes, there are DWDM transport platforms.  In modern networks, such as those traversing the United States, the DWDM transport platforms are typically modular in nature with optical switching at the individual wavelength level carried out by one or more ROADM modules using the pioneering technology invented and patented by Capella.  The ROADM modules may, in turn, be comprised of one or more modules.  The modules are sold by Cisco and other manufacturers in various configurations, and also individually, with specific instructions and guidance on how to build infringing platforms.  The instructions and guidance are set forth in Cisco marketing materials and, on information and belief, are provided directly by Cisco sales representatives and system engineers to customers of the platforms and components.

12.     DWDM transport platforms and their ROADM modules are the backbone of advanced fiberoptic networks because they route (or switch) signals traveling along fiber optic cables in the directions they need to go.  The switching occurs on the wavelength level, which means that a ROADM can separate all the wavelengths of light entering the device and direct them to go in different directions depending on the platform configuration.  Certain wavelengths can be dropped from a fiber altogether and new wavelengths can be added onto fibers.  ROADMs can also control flow across fiber optic cables.  If traffic along one cable is particularly heavy at certain times, then a ROADM can manage that load by sending traffic along one fiber at certain times and another fiber at other times.

13.     The development of ROADMs and their subsequent introduction into networks enabled video to be sent over the Internet.  Before ROADMs, service providers had to use Optical to Electrical to Optical switches ("OEO switches"), which meant that data carried along optical

cables had to be converted into electrical signals to be routed. In addition, OEO switches were very slow, expensive and difficult to house due to their refrigerator-like size. The introduction of ROADMs by service providers into their networks in about 2005 changed this, by allowing video to be transmitted at the speed of light through the ROADM instead of at the speed of electronics which is approximately 1000 times slower. ROADMs are also significantly less expensive than OEO switches and much easier to house based their compact size.

14.     As their name suggests, ROADMs are reconfigurable, which means that they can be adjusted to send traffic or wavelengths in different directions at different times.

15.     To ensure network reliability, ROADMs are subjected to a lengthy approval process before they are deployed. In addition, for most networks, more than one vendor is selected.

16.     On information and belief, Cisco has offered for sale, sold and/or imported into the United States DWDM transport platforms and modules for optical networks deployed around the world including specifically in this District that infringe the '905 and '906 patents and continues to do so.

## II.     THE PATENTS IN SUIT

17.     Capella is the owner of United States Patent No. 6,879,750 entitled, "Reconfigurable Optical Add-Drop Multiplexers with Servo Control and Dynamic Spectral Power Management Capabilities" (the "'750 patent"). The '750 patent issued April 12, 2005 to Capella and claims priority to applications filed in 2001. The '750 was reissued to Capella on May 17, 2011 as United States Patent No. RE 42,368 (the "'368 patent"). The '368 patent was reissued to Capella on March 17, 2020 as United States Patent No. RE 47,905 (the "'905 patent").

18.     One or more claims of the '905 patent is substantially identical to one or more claims of the original '368 patent.

19.     Preferred embodiments of inventions recited in the '905 patent provide an optical add-drop apparatus comprising a multi-wavelength input port, a wavelength-selective device for spatially separating spectral channels, and an array of beam deflecting elements to reflect the spectral channels to selected ports. The inventions provide many advantages over prior art

1   devices including the capability of routing spectral channels on a channel-by-channel basis and

2   directing any spectral channel into any one of the output ports. Its underlying operation is

3   dynamically reconfigurable, and its underlying architecture is intrinsically scalable to a large

4   number of channel counts.

5       20.     Capella is the owner of United States Patent No. 6,625,346 entitled,

6   "Reconfigurable Optical Add-Drop Multiplexers with Servo Control and Dynamic Spectral

7   Power Management Capabilities" (the "'346 patent").  The '346 patent issued September 23,

8   2003 to Capella and claims priority to applications filed in 2001.  The '346 patent was reissued to

9   Capella on November 14, 2006 as United States Patent No. RE 39,397 (the "'397 patent").  The

10  '397 was reissued to Capella on September 6, 2011 as United States Patent No. RE 42,678 (the

11  "'678 patent").  The '678 patent was reissued to Capella on March 17, 2020 as United States

12  Patent No. RE 47,906 (the "'906 patent").

13      21.     One or more claims of the '906 patent is substantially identical to one or more

14  claims of the original '678 patent.

15      22.     Preferred embodiments of inventions recited in the '906 patent provide

16  wavelength-separating-routing apparatus comprising an input port for a multiple wavelength

17  optical signal, a wavelength-separator for separating the multiwavelength optical signal, and an

18  array of channel micromirrors to reflect the spectral channels to selected ports.  The inventions

19  provide many advantages over prior art devices including the capability of routing spectral

20  channels on a channel-by-channel basis and directing any spectral channel into any one of the

21  output ports. Its underlying operation is dynamically reconfigurable, and its underlying

22  architecture is intrinsically scalable to a large number of channel counts.

23      23.     The '905 and '906 patents, and all members of the chain discussed above, are

24  assigned to Capella and Capella holds the right to sue and to recover damages for infringement,

25  including past infringement, of each of the '905 and '906 patents (collectively, the "Asserted

26  Patents").

27

28

III. **CISCO'S DIRECT INFRINGEMENT**

a. **Selling, Testing and Related Activities**

24.     On information and belief, Cisco, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement by, among other things, making, selling, offering for sale, and/or importing products and/or services that infringe the Asserted Patents, and also through its own use and testing of products and/or services that infringe the Asserted Patents.

IV. **CISCO'S INDIRECT INFRINGEMENT**

a. **Cisco's Knowledge of the Capella Patents**

25.     Cisco's infringement began long ago and has continued willfully.

26.     Cisco has been on notice of infringement since at least 2014 when Capella filed suit for infringement of the '368 and '678 patents against Cisco in the U.S. District Court for the Southern District of Florida in an action entitled *Capella Photonics, Inc. v. Cisco Systems, Inc.* (Case No. 1:14-cv-20529-PAS).  That action was consolidated with other actions and subsequently transferred to the Northern District of California, where it was assigned Case No. 3:14-cv-03348-EMC.  In connection with its defense of that action, Cisco has followed and participated in post-grant proceedings for the '368 and '678 patents since 2014 and its counsel reported to the court on those post-grant proceedings.  Since December 2019, Cisco has been on notice of the PTO's decision to reissue the '368 and '678 patents and the scope of the reissued claims.  Since February 2020, Cisco has known about the March 17, 2020 issuance of the '905 and '906 patents and the scope of the reissued claims.

b. **Cisco's Knowledge of & Specific Intent to Cause Third-Party Actions Infringing the '905 and '906 Patents**

27.     Cisco is a known market leader and one of the dominant players in optical transport platforms.

28.     Cisco knows that it provides and markets products to customers that, when used, directly infringe the '905 and '906 patents.  These products include, without limitation, the 15454

MSTP and NCS 2000 products (collectively "Infringing Products" and/or "Accused Instrumentalities").

29.     Cisco actively encourages the installation and use of its Infringing Products. For example, Cisco explains to customers the individual modules that are available to customers as well as standard and custom configurations.  *See e.g.*

https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-convergence-system-2000-series/datasheet-c78-734544.html

https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-convergence-system-2000-series/data_sheet_c78-729221.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_ncs_line_card_configuration/provisioning_reconfigurable_optical_add_drop_cards.html#ID1607

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_ncs_line_card_configuration/b_ncs_line_card_configuration_preface_01010.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/network_config/guide/b_ncs_network_configuration/b_ncs_network_configuration_chapter_0100.html

https://www.cisco.com/c/en/us/products/collateral/optical-networking/ons-15454-series-multiservice-provisioning-platforms/data_sheet_c78-578552.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/dwdm/linecard_config/guide/b_ons_line_card_configuration/b_ons_line_card_configuration_chapter_010010.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d921_referenceguide.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d921_referenceguide/454d921_roadmcard.html

https://www.cisco.com/c/en/us/products/optical-networking/ons-15454-sonet-multiservice-provisioning-platform-mspp/index.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r7_0/dwdm/planning/guide/70epg/d7ovm.html

1    https://www.cisco.com/c/en/us/td/docs/optical/metroplanner/metroplanner_10_6_2/operati
2    ons/guide/b-454mp-opsguide/454mp_opsguide_chapter_0100.html
3    where Cisco describes standard and custom platform configurations.

4         30.     On information and belief, Cisco has designed, marketed, and sold its Infringing
5    Products to third parties with knowledge and the specific intent to cause the third parties to make,
6    use, offer to sell, or sell in the United States, and/or import into the United States the Infringing
7    Products.  *See Id.*

8         31.     On information and belief, Cisco actively encourages its customers and end users
9    to directly infringe the '905 and '906 patents by encouraging them to use the Infringing Products.

10        32.     On information and belief, Cisco promoted and continues to promote the sales of
11   the Accused Instrumentalities, *e.g.*, through Cisco's user manuals, product support, marketing
12   materials, demonstrations, installation support, and training materials to actively induce the users
13   of the accused products to infringe the '905 and '906 patents.

14        33.     Cisco knew or should have known and intended that its continued actions would
15   infringe and actively induce and contribute to the infringement of the claims of the '368 and '678
16   patents as reissued in the '905 and '906 patents.

17   **<u>COUNT I</u>**
18   **<u>(INFRINGEMENT OF THE '905 PATENT)</u>**

19        34.     Paragraphs 1- 33 are incorporated by reference as if fully set forth herein.

20        35.     Pursuant to 35 U.S.C. § 282, the '905 patent is presumed valid.

21        36.     On information and belief, Cisco directly infringes the '905 patent by having
22   made, making, using, offering for sale, selling and/or importing into the United States the
23   Infringing Products and Accused Instrumentalities, and continues to do so.

24        37.     On information and belief, the Infringing Products directly infringe at least claim
25   23 of the '905 patent at least in the exemplary manner described below.

26        38.     The Infringing Products comprise an optical add-drop apparatus comprising: [a]
27   the fiber collimator input port for an input multi-wavelength optical signal having first spectral
28   channels the fiber collimator one or more other ports for second spectral channels the output port

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                16                CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

1  for an output multi-wavelength optical signal; [b] a wavelength-selective device for spatially

2  separating said spectral channels; [c] a spatial array of beam-deflecting elements positioned such

3  that each element receives a corresponding one of said spectral channels, each of said elements

4  being individually and continuously controllable in two dimensions to reflect its corresponding

5  spectral channel to a selected one of said output port or the fiber collimator ports and to control

6  the power of the spectral channel reflected to said output port or the fiber collimator selected port.

7      39.    Cisco offers the 15454 MSTP and NCS 2000 products.  These products are

8  modular Dense Wavelength Division Multiplexing (DWDM) add-drop optical transport platforms

9  designed for metro, regional and long-haul networks.

10     40.    The NCS 2000 is a modular add-drop optical platforms for dense wavelength-

11 division multiplexing (DWDM) solutions.  It delivers touchless programmability, massive scale,

12 and ultra-long-haul performance necessary for tomorrow's converged network architectures.  The

13 15454 MSTP is a modular add-drop optical platform that offers DWDM, ROADM and network

14 design capabilities to deliver and manage growing networks.  *See e.g.*

15     https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-

16     convergence-system-2000-series/datasheet-c78-734544.html

17     https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-

18     convergence-system-2000-series/data_sheet_c78-729221.html

19     https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_n

20     cs_line_card_configuration/provisioning_reconfigurable_optical_add_drop_cards.html#I

21     D1607

22     https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_n

23     cs_line_card_configuration/b_ncs_line_card_configuration_preface_01010.html

24     https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/network_config/guide/b_n

25     cs_network_configuration/b_ncs_network_configuration_chapter_0100.html

26     https://www.cisco.com/c/en/us/products/collateral/optical-networking/ons-15454-series-

27     multiservice-provisioning-platforms/data_sheet_c78-578552.html

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                      17                    CAPELLA'S ANSWER TO FIRST
                                                                     AMENDED COMPLAINT

1  https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/dwdm/linecard_config/guide/b
2  _ons_line_card_configuration/b_ons_line_card_configuration_chapter_010010.html
3  https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d9
4  21_referenceguide.html
5  https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d9
6  21_referenceguide/454d921_roadmcard.html
7  https://www.cisco.com/c/en/us/products/optical-networking/ons-15454-sonet-
8  multiservice-provisioning-platform-mspp/index.html
9  https://www.cisco.com/c/en/us/td/docs/optical/15000r7_0/dwdm/planning/guide/70epg/d7
10  ovw.html
11  https://www.cisco.com/c/en/us/td/docs/optical/metroplanner/metroplanner_10_6_2/operati
12  ons/guide/b-454mp-opsguide/454mp_opsguide_chapter_0100.html

13       41.     The Infringing Products use a flexible ROADM architecture.  The ROADM

14  functionality is delivered using Wavelength Selective Switch (WSS), a module of the platforms.

15       42.     According to Cisco, the Cisco ONS 15454 MSTP offers a fully integrated

16  reconfigurable optical add/drop multiplexing (ROADM) solution, for delivering any wavelength

17  to any location in a metro or regional network.  The ROADM cards are part of the Cisco ONS

18  15454 MSTP intelligent DWDM architecture engineered to reduce DWDM complexity and speed

19  the deployment of next-generation networking solutions.  Further, according to Cisco, the large

20  numbers of ports on the Cisco NCS 2000 Flex Spectrum Single Module ROADM Line Cards are

21  made possible by the twin-WSS route and select architecture featured by Cisco nLight ROADMs.

22  By routing, instead of broadcasting, express channels, insertion loss is reduced, preserving optical

23  signal-to-noise ratio (OSNR).  The Cisco nLight architecture therefore allows multi-degree

24  ROADM nodes, plus CCOFS add/drop, at large scale.  *See Id.*

25       43.     The WSS enables dynamic optical branching to multiple different optical paths, in

26  addition to facilitating local add/drop of individual wavelengths.  The ROADM includes multiple

27  fiber collimator in/out ports.  The fiber collimators provide and serve as input ports for multi-

28  wavelength optical signals and as output and other ports.  *See Id.*

44.     The WSS use a wavelength separator or diffraction grating as a wavelength selective device for separating the multi-wavelength optical signal from a fiber collimator input port into multiple spectral channels.  This splits the signal into multiple wavelengths for optical branching.   The WSS enables optical branching to multiple different optical paths, in addition to facilitating local add/drop of individual wavelengths.  *See Id*.

45.     The WSS includes a spatial array of individually and continuously controllable beam-deflecting elements, including MEMs and LCoS channel micromirrors, positioned such that each element receives a corresponding one of the spectral channels, each of the elements being individually and continuously controllable in two dimensions to reflect its corresponding spectral channel to a selected one of the output port or the fiber collimator ports and to control the power of the spectral channel reflected to the output port or the fiber collimator selected port.  *See Id*.

46.     The WSS includes a multiwavelength fiber collimator input port.  A grating is used to separate the wavelengths, and each wavelength is directed onto its own moveable mirror or beam deflecting element.  This allows automatic power management of each wavelength and switching of individual wavelengths to selected fiber collimator output ports.

47.     Cisco also directly infringes other claims of the '905 patent.

48.     On information and belief, use of the Accused Instrumentalities results in infringement of the claims of the '905 patent.

49.     Cisco's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '905 patent.

50.     On information and belief, at least as of the filing of this Complaint and likely earlier as set forth above, Cisco knew of the '905 patent, and knew that its activities would lead to infringement of the patent by its customers and end users.

51.     For example, Cisco sells the Accused Instrumentalities to customers and end users with the intent that such customers and end users will use the Accused Instrumentalities in such a way to constitute direct infringement of at least Claim 23 of the '905 patent as set forth above.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                    19                    CAPELLA'S ANSWER TO FIRST
                                                                              AMENDED COMPLAINT

52.     For example, Cisco explains to customers the individual modules that are available to customers as well as standard and custom configurations.  *See Id.*

53.     Cisco performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '905 patent and its claims and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.

54.     On information and belief, Cisco engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.*, through Cisco's user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '905 patent.

55.     Accordingly, Cisco has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '905 patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '905 patent. Accordingly, Cisco has been and currently is inducing infringement of the '905 patent in violation of 35 U.S.C. § 271(b).

56.     Cisco has also contributorily infringed and continues to contribute to infringement of claims of the '905 patent by selling and offering to sell, offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, claimed by the '905 patent, knowing the Accused Instrumentalities to be especially made or especially adapted for use in an infringement of the '905 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

57.     On information and belief, at least as of the filing of this Complaint and likely earlier as set forth above, Cisco knew of the '905 patent, and knew that its activities would lead to infringement of the patent by its customers and end users.

58.     Cisco knows the modules in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '905 patent, not a staple article, and not a

commodity of commerce suitable for substantial noninfringing use.  For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement.  Accordingly, Cisco has been, and currently is, contributorily infringing the '905 patent, in violation of 35 U.S.C. § 271(c).

59.     Capella has suffered and will continue to suffer damage as a result of Cisco's infringement of the '905 patent in an amount to be proven at trial.

60.     Upon information and belief, Cisco did not have and could not have had a reasonable belief that the Accused Instrumentalities did not infringe the Asserted Patents.  Any manufacturing, sales, offers for sale, uses, or importation by Defendants of the Infringing Products reflects a deliberate and knowing decision to infringe the '905 patent or, at the very least, a reckless disregard of Capella's patent rights.  By its prior action, Capella made known to Cisco that Cisco's activities in making, using, offering for sale, selling and/or importing into the United States the Infringing Products and Accused Instrumentalities constituted a sufficient risk of infringement that Cisco should have ceased those activities.  Under the circumstances, Cisco knew or should have known the risk of infringement caused by Cisco's activities related to the Accused Instrumentalities.  Despite Cisco's knowledge, Cisco intentionally ignored or recklessly disregarded the risk that its activities infringed the Asserted Patents.  Cisco's conduct manifested deliberate or reckless disregard of Capella's rights in the Asserted Patents and was malicious, flagrant and in bad faith.

61.     Cisco's manufacturing, sales, offers for sale, uses, or importation of the Infringing Products has been willful, and Capella is entitled to treble damages and attorneys' fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284 & 285.

62.     Cisco will continue to infringe the '905 patent unless and until it is enjoined by this Court.

63.     Cisco's acts of infringement have caused and will continue to cause irreparable harm to Capella unless and until Cisco is enjoined by this Court.

1
2

## COUNT II

## (INFRINGEMENT OF THE '906 PATENT)

3      64.    Paragraphs 1-63 are incorporated by reference as if fully set forth herein.

4      65.    Pursuant to 35 U.S.C. § 282, the '906 patent is presumed valid.

5      66.    On information and belief, Cisco directly infringes the '906 patent by having

6    made, making, using, offering for sale, selling and/or importing into the United States the

7    Infringing Products and Accused Instrumentalities, and continues to do so.

8      67.    On information and belief, the Infringing Products directly infringe at least claim

9    68 of the '906 patent at least in the exemplary manner described below.

10      68.    The Infringing Products comprise a wavelength-separating-routing apparatus,

11    comprising: a) multiple fiber collimators, providing and serving as an input port for a multi-

12    wavelength optical signal and a plurality of output ports; b) a wavelength-separator, for

13    separating said multi-wavelength optical signal from said fiber collimator input port into multiple

14    spectral channels; c) a beam-focuser, for focusing said spectral channels into corresponding

15    spectral spots; and d) a spatial array of channel micromirrors positioned such that each channel

16    micromirror receives one of said spectral channels, said channel micromirrors being pivotal about

17    two axes and being individually and continuously controllable to reflect corresponding received

18    spectral channels into any selected ones of said fiber collimator output ports and to control the

19    power of said received spectral channels coupled into said fiber collimator output ports.

20      69.    Cisco offers the 15454 MSTP and NCS 2000 products.  These products are

21    modular Dense Wavelength Division Multiplexing (DWDM) add-drop optical transport platforms

22    designed for metro, regional and long-haul networks.

23      70.    The NCS 2000 is a modular add-drop optical platforms for dense wavelength-

24    division multiplexing (DWDM) solutions.  It delivers touchless programmability, massive scale,

25    and ultra-long-haul performance necessary for tomorrow's converged network architectures.  The

26    15454 MSTP is a modular add-drop optical platform that offers DWDM, ROADM and network

27    design capabilities to deliver and manage growing networks.  *See e.g.*

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC            22            CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-convergence-system-2000-series/datasheet-c78-734544.html

https://www.cisco.com/c/en/us/products/collateral/optical-networking/network-convergence-system-2000-series/data_sheet_c78-729221.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_ncs_line_card_configuration/provisioning_reconfigurable_optical_add_drop_cards.html#ID1607

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/linecard_config/guide/b_ncs_line_card_configuration/b_ncs_line_card_configuration_preface_01010.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/ncs/network_config/guide/b_ncs_network_configuration/b_ncs_network_configuration_chapter_0100.html

https://www.cisco.com/c/en/us/products/collateral/optical-networking/ons-15454-series-multiservice-provisioning-platforms/data_sheet_c78-578552.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r10_0/dwdm/linecard_config/guide/b_ons_line_card_configuration/b_ons_line_card_configuration_chapter_010010.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d921_referenceguide.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r9_2_1/dwdm/reference/guide/454d921_referenceguide/454d921_roadmcard.html

https://www.cisco.com/c/en/us/products/optical-networking/ons-15454-sonet-multiservice-provisioning-platform-mspp/index.html

https://www.cisco.com/c/en/us/td/docs/optical/15000r7_0/dwdm/planning/guide/70epg/d7ovw.html

https://www.cisco.com/c/en/us/td/docs/optical/metroplanner/metroplanner_10_6_2/operations/guide/b-454mp-opsguide/454mp_opsguide_chapter_0100.html

71.     The Infringing Products use a flexible ROADM architecture.  The ROADM functionality is delivered using Wavelength Selective Switch (WSS), a module of the platforms.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                23                CAPELLA'S ANSWER TO FIRST
AMENDED COMPLAINT

72.     According to Cisco, the Cisco ONS 15454 MSTP offers a fully integrated reconfigurable optical add/drop multiplexing (ROADM) solution, for delivering any wavelength to any location in a metro or regional network.  The ROADM cards are part of the Cisco ONS 15454 MSTP intelligent DWDM architecture engineered to reduce DWDM complexity and speed the deployment of next-generation networking solutions.  Further, according to Cisco, the large numbers of ports on the Cisco NCS 2000 Flex Spectrum Single Module ROADM Line Cards are made possible by the twin-WSS route and select architecture featured by Cisco nLight ROADMs. By routing, instead of broadcasting, express channels, insertion loss is reduced, preserving optical signal-to-noise ratio (OSNR).  The Cisco nLight architecture therefore allows multi-degree ROADM nodes, plus CCOFS add/drop, at large scale.  *See Id.*

73.     The WSS enables dynamic optical branching to multiple different optical paths, in addition to facilitating local add/drop of individual wavelengths.  The ROADM includes multiple fiber collimator in/out ports.  The fiber collimators provide and serve as input ports for multi-wavelength optical signals and as output and other ports.  *See Id.*

74.     The WSS use a wavelength separator or diffraction grating as a wavelength-separator for separating a multi-wavelength optical signal from a fiber collimator input port into multiple spectral channels.  This splits the signal into multiple wavelengths for optical branching. The WSS enables optical branching to multiple different optical paths, in addition to facilitating local add/drop of individual wavelengths.  *See Id.*

75.     The WSS includes a spatial array of individually and continuously controllable channel micromirrors, including MEMs and LCoS channel micromirrors, positioned such that each channel micromirror receives a spectral channels.  The channel micromirrors are pivotal about two axes and are individually and continuously controllable to reflect corresponding received spectral channels into any selected ones of the fiber collimator output ports and to control the power of the received spectral channels coupled into the fiber collimator output ports. *See Id.*

76.     The Cisco WSS includes a multiwavelength fiber collimator input port.  A grating is used to separate the wavelengths, and each wavelength is directed onto its own moveable

1    mirror or beam deflecting element.  This allows automatic power management of each

2    wavelength and switching of individual wavelengths to selected fiber collimator output ports.

3    The WSS also works in reverse to direct separate input signals of different wavelengths to a

4    common fiber collimator port.  *See e.g.*

5         https://www.fujitsu.com/global/documents/about/resources/publications/fstj/archives/vol4

6         2-4/paper06.pdf

7         77.     Cisco also directly infringes other claims of the '906 patent.

8         78.     On information and belief, use of the Accused Instrumentalities results in

9    infringement of the claims of the '906 patent.

10        79.     Cisco's affirmative acts of making, using, selling, offering for sale, and/or

11   importing the Accused Instrumentalities have induced and continue to induce users of the

12   Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary

13   way to infringe the claims of the '906 patent.

14        80.     On information and belief, at least as of the filing of this Complaint and likely

15   earlier as set forth above, Cisco knew of the '906 patent, and knew that its activities would lead to

16   infringement of the patent by its customers and end users.

17        81.     For example, Cisco sells the Accused Instrumentalities to customers and end users

18   with the intent that such customers and end users will use the Accused Instrumentalities in such a

19   way to constitute direct infringement of at least Claim 68 of the '906 patent as set forth above.

20        82.     For example, Cisco explains to customers the individual modules that are available

21   to customers as well as standard and custom configurations.  *See Id*.

22        83.     Cisco performed the acts that constitute induced infringement, and would induce

23   actual infringement, with the knowledge of the '906 patent and its claims and with the

24   knowledge, or willful blindness to the probability, that the induced acts would constitute

25   infringement.

26        84.     On information and belief, Cisco engaged in such inducement to promote the sales

27   of the Accused Instrumentalities, *e.g.*, through Cisco's user manuals, product support, marketing

28

materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '906 patent.

85.     Accordingly, Cisco has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '906 patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '906 patent. Accordingly, Cisco has been and currently is inducing infringement of the '906 patent in violation of 35 U.S.C. § 271(b).

86.     Cisco has also contributorily infringed and continues to contribute to infringement of claims of the '906 patent by selling and offering to sell, offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, claimed by the '906 patent, knowing the Accused Instrumentalities to be especially made or especially adapted for use in an infringement of the '906 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

87.     On information and belief, at least as of the filing of this Complaint and likely earlier as set forth above, Cisco knew of the '906 patent, and knew that its activities would lead to infringement of the patent by its customers and end users.

88.     Cisco knows the modules in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '906 patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use.  For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement.  Accordingly, Cisco has been, and currently is, contributorily infringing the '906 patent, in violation of 35 U.S.C. § 271(c).

89.     Capella has suffered and will continue to suffer damage as a result of Cisco's infringement of the '906 patent in an amount to be proven at trial.

90.     Upon information and belief, Cisco did not have and could not have had a reasonable belief that the Accused Instrumentalities did not infringe the Asserted Patents.  Any

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 3:20-cv-01858-EMC                    26          CAPELLA'S ANSWER TO FIRST
                                                          AMENDED COMPLAINT

manufacturing, sales, offers for sale, uses, or importation by Defendants of the Infringing Products reflects a deliberate and knowing decision to infringe the '906 patent or, at the very least, a reckless disregard of Capella's patent rights.  By its prior action, Capella made known to Cisco that Cisco's activities in making using, offering for sale, selling and/or importing into the United States the Infringing Products and Accused Instrumentalities constituted a sufficient risk of infringement that Cisco should have ceased those activities.  Under the circumstances, Cisco knew or should have known the risk of infringement caused by Cisco's activities related to the Accused Instrumentalities.  Despite Cisco's knowledge, Cisco intentionally ignored or recklessly disregarded the risk that its activities infringed the Asserted Patents.  Cisco's conduct manifested deliberate or reckless disregard of Capella's rights in the Asserted Patents and was malicious, flagrant and in bad faith.

91.     Cisco's manufacturing, sales, offers for sale, uses, or importation of the Infringing Products has been willful, and Capella is entitled to treble damages and attorneys' fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284 & 285.  Cisco will continue to infringe the '906 patent unless and until it is enjoined by this Court.

92.     Cisco's acts of infringement have caused and will continue to cause irreparable harm to Capella unless and until Cisco is enjoined by this Court.

## EXCEPTIONAL CASE

93.     The allegations contained in paragraphs 1-92 above are repeated and realleged as if fully set forth herein.

94.     Based on, among other things, the facts alleged in the paragraphs above, including Defendants' intentional use of the Asserted Patents, Defendants' knowledge of its infringement, and Defendants' continued direct and/or indirect infringement, this case is exceptional under 35 U.S.C. § 285, and Capella is entitled to its reasonable costs and expenses of litigation.

## REQUEST FOR RELIEF

WHEREFORE, Capella respectfully requests that this Court enter:

a.     A Judgment in favor of Capella that Cisco has infringed, either literally and/or under the doctrine of equivalents, the '905 patent and the '906 patent;

Manatt, Phelps & Phillips, LLP
Attorneys At Law
San Francisco

1      b.      An order enjoining Cisco from further acts of infringement of the Asserted

2  Patents;

3      c.      A judgment and order requiring Cisco to pay Capella its damages, costs, expenses,

4  and prejudgment and post-judgment interest for its infringement of the Asserted Patents, as

5  provided under 35 U.S.C. § 284; and, if necessary to compensate Capella for Cisco's

6  infringement adequately, an accounting;

7      d.      Awarding increased damages for Defendants' willful infringement;

8      e.      Declaring that this case is exceptional under 35 U.S.C. § 285 and awarding

9  Capella its reasonable costs and expenses of litigation, including attorneys' and experts' fees; and

10     f.      Awarding Capella such equitable, other, different, and additional relief as this

11  Court deems equitable and proper under the circumstances.

12                          **<u>DEMAND FOR JURY TRIAL</u>**

13      Capella hereby demands trial by jury on all claims and issues so triable.

14

15   Dated:  June 15, 2020                    MANATT, PHELPS & PHILLIPS, LLP

16

17                                By: */s/ Robert D. Becker*
                                      Robert D. Becker

18                                   Attorneys for Defendant
                                     CAPELLA PHOTONICS, INC.
19

20

21

22

23

24

25

26

27

28