UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CAPELLA PHOTONICS, INC.,<br><br>        Defendant. | Case No. 20-cv-01858-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Docket No. 35 |

## I.   INTRODUCTION

Cisco Systems, Inc. ("Cisco" or "Plaintiff") has filed suit against Capella Photonics, Inc. ("Capella" or "Defendant"); Capella has counterclaimed. Both parties are players in the field of optical communication, and the patents at issue pertain to technology involved in optical networking applications. Generally speaking, Cisco seeks a declaration of non-infringement of Capella's patents, while Capella alleges infringement of its patents. However, the instant motion seeks to resolve only a single aspect of the case: whether Capella can seek damages for alleged infringement that took place prior to the reissue of the relevant patents (*i.e.* whether Capella can seek "pre-issue damages").

## II.   BACKGROUND

A.   The Patents

As described in Cisco's motion:

> The Capella patents describe a purported invention in the field of optical communication. In particular, they describe a purportedly improved "optical add-drop multiplexer." An "optical add-drop multiplexer" is a component in a fiber-optic network that 1) receives light signals transmitted over optical fibers over different

> wavelength "channels," 2) removes ("drops") and inserts ("adds") light signals on selected channels while letting the signals on other channels "pass through," and 3) transmits the add and pass-through channels to the next destination.

Mot. at 2–3 (internal citations omitted).  Cisco adds that, "[l]ike the prior art devices, the purportedly novel optical add-drop multiplexers of the Capella patents included ports, a wavelength separator, a beam focuser, and an array of micromirrors." *Id.* at 3.  Cisco represents that, in the patents, Capella asserts that its optical add-drop multiplexers are distinguished over the prior art on the grounds that (1) the pivoting angle of the micromirrors could be continuously adjusted, (2) the micromirrors could pivot on two axes, instead of only one, and (3) the multiplexer included a "servo-control assembly." *Id.* (quoting '905 Patent at 4:19–5:1).

B. <u>Litigation and Patent History</u>

This is the second lawsuit between these parties; in 2014, Capella alleged infringement of two of its patents by Cisco: Patent No. RE42,368 (the "'368 Patent") and Patent No. RE42,678 (the "'678 Patent").  *See Capella Photonics, Inc. v. Cisco Systems, Inc.*, Case No. 3:14-cv-03348-EMC (N.D. Cal. Feb. 12, 2014).  As alleged by Cisco, Cisco instituted *inter partes* review during the prior case, challenging claims of the '368 Patent and the '678 Patent.  *See* Complaint ¶¶ 16, 31.  As to the '368 Patent, "the Patent Trial and Appeal Board ['PTAB'] issued a final written decision cancelling claims 1-6, 9-13, and 15-22 [as obvious over the prior art]." *Id.* ¶ 16; *see also* Exh. C to FAC, Docket No. 26-3.  The cancellation was affirmed by the Federal Circuit, after which point Capella pursued reissue proceedings for the '368 Patent, and Patent No. RE47,905 (the "'905 Patent") was issued on March 17, 2020.  FAC ¶ 17–19.  Cisco contends that "[d]uring the course of reissue proceedings, Capella represented that claims of the '905 Patent have the same scope as claims of the '368 Patent that Capella accused Cisco of infringing in the Prior Litigation." *Id.* ¶ 4.  As to the '678 Patent, it was also placed into *inter partes* review, and the PTAB cancelled claims 1-4, 9, 10, 13, 17, 19-23, 27, 29, 44-46, 53, and 61-65 as obvious over the prior art.  *Id.* ¶ 6; *see also* Exh. H to FAC, Docket No. 26-8.  The cancellation was also affirmed by the Federal Circuit.  FAC ¶ 6.  Subsequently, Capella pursued reissue proceedings for the '678 Patent, and U.S. Patent No. RE47,906 was issued on March 17, 2020 (the same day that the '905 Patent issued).  *Id.* ¶ 33–

34.[1]

C. <u>Key Factual Allegations</u>

In its counterclaim, Capella alleges infringement going back to at least 2014, six years prior to the reissuance of the '905 and '906 Patents. *See* Docket No. 29 ("Counterclaim") ¶ 26. Pre-issues damages are available only where "the claims of the original and reissued patents are substantially identical." 35 U.S.C. § 252. Capella contends that one or more claims of the '905 and '906 Patents is substantially identical to one or more claims of the original '368 and '678 Patents. Counterclaim ¶¶ 18, 21. Cisco contends that "[t]he reissue claims at issue here are substantively narrower, not substantially identical, to the original claims," and therefore that "Capella is barred from pursuing damages prior to March 17, 2020, the issue date of the reissue patents." Motion for Judgment on the Pleadings for Capella's Claims to Pre-Issue Damages ("Mot.") at 1, Docket No. 35. More specifically, Cisco asserts:

> The reissue claims that Capella ultimately obtained differ from the claims of the original patents in that they recite, for at least one port in every claim, "fiber collimator" ports rather than "ports." It was necessary to limit the reissue claims in this way so that Capella could distinguish over the prior art from the Board proceedings. Reissue patents with these narrowed claims issued as the '905 and '906 patents on March 17, 2020.

Mot. at 5 (internal citations omitted). Cisco also contends that "if the [reissue claims] claims are substantially identical [to the original claims], as Capella contends, then Capella must be collaterally estopped from asserting claims that have already been found invalid." Reply at 1. In short, Cisco argues that if the reissue claims are narrower than the original claims, Capella cannot recover pre-issue damages, and if the reissue claims are substantially identical to the original claims, Capella cannot recover *any* damages because the claims would again be invalid; thus, there is no scenario in which Capella is entitled to pre-issue damages, and Cisco is therefore entitled to judgment on the pleadings with respect to pre-issue damages. In short, Capella should not be allowed to have its proverbial cake and eat it too.

---

[1] Cisco contends that "[t]he specifications of the two reissue patents and the two original patents are identical in all material respects." Thus, in several places, the motion cites only to the '905 Patent. Mot. at 2 n.1.

3

D.  Procedural Background

Cisco filed this suit against Capella on March 16, 2020. *See* Docket No. 1. Capella filed a Motion to Dismiss the Complaint on May 11, 2020. *See* Docket No. 22. However, an amended complaint was filed on June 1, 2020, *see* Docket No.26, and the Motion to Dismiss was withdrawn, *see* Docket No. 28. On June 15, 2020, Capella filed an answer and counterclaim. *See* Docket No. 29. The current Motion for Judgment on the Pleadings was filed on July 7, 2020. *See* Docket No. 35. It is the only motion currently pending before the Court. At the Initial Case Management Conference held on July 9, 2020, the parties indicated to the Court that resolution of this motion would be helpful in defining the scope of the controversy that they will be bringing to the ADR process (due to be completed by October 16, 2020). *See* Docket No. 40 (Transcript of July 9, 2020 Proceedings) at 2–4.

### III.   DISCUSSION

A.  Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

The same standard of review applies to both Rule 12(c) and Rule 12(b)(6) motions. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054, n.4 (9th Cir. 2011). Thus, "[f]or purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.* "[D]ocuments specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned." *Id.*

"The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). "[W]hen a

4

written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*." *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002) (citation and quotation omitted, emphasis in original); *see also Dunson v. Cordis Corp.*, No. 16-cv-03076-SI, 2016 WL 3913666, at *2 (N.D. Cal. Jul. 20, 2016). The court should not dismiss the complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.*

B.  Discussion

The parties agree that pre-issue damages are available only where the original and the reissued claims are "substantially identical." 35 U.S.C. § 252; *see also* Mot. at 1 ("Pre-issue damages are only available if the reissue claims are 'substantially identical' to the original claims."); Opp. at 1 ("Under 35 U.S.C § 252, the holder of a reissue patent, like Capella, is entitled to recover damages from the issuance date of the corresponding original patent for any reissue claim that is substantially identical to an original claim."). Cisco first contends that Capella is not entitled to pre-issue damages because "[t]he reissue claims at issue here are substantively narrower, not substantially identical, to the original claims." Mot. at 1. Capella strongly disagrees with that contention and "expressly alleges that 'one or more claims' of both the Asserted Patents 'is substantially identical to one or more claims' of the original patent from which it stems." Opp. at 11 (citing Counterclaim ¶¶ 18, 21).

However, accepting Capella's position (without ruling on the issue of substantial identicality) that the relevant reissue claims are "substantially identical" to the original claims, the question is whether claims that are substantially identical to previously invalidated claims are also invalid. In other words, given the PTAB's ruling, can this Court nonetheless redetermine the scope of the original claims of the '368 and '678 Patents, and conclude (contrary to the PTAB) that the original claims were not invalid and that Capella's reissue claims are likewise not invalid? That is the only way Capella can thread the needle to recover pre-issue damages.

The Federal Circuit has not spoken directly to this precise question. *See Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 257 (D. Mass. 2019). However, logic and precedent suggest the PTAB determination should be given preclusive effect.

5

"Issue preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). It applies in the administrative context and can also apply between administrative agencies and courts. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) ("[W]here a single issue is before a court and an administrative agency, preclusion also often applies."); *MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("It is well established that collateral estoppel, also known as issue preclusion, applies in the administrative context."). "Since the criteria of collateral estoppel are not unique to patent issues," courts follow the law of the regional circuit to determine whether collateral estoppel will apply. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013).

Within the Ninth Circuit, "[a] party invoking issue preclusion must show: 1) the issue at stake is identical to an issue raised in the prior litigation; 2) the issue was actually litigated in the prior litigation; and 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Littlejohn*, 321 F.3d at 923. Here, Capella argues:

> [T]he PTAB's decision invalidating certain of the original claims was governed by legal and evidentiary standards that differ materially from those that this Court must apply when evaluating the validity of claims in the Asserted Patents. As explained in the *Convolve* case, the PTAB's decision was governed by the [broadest reasonable interpretation or "BRI"] construction standard and a preponderance of the evidence evidentiary standard, while this Court is required to interpret the scope of the claims under the *Phillips* standard, pursuant to which all claims are presumed valid and Cisco must establish invalidity by a clear and convincing evidence.

Opp. at 24–25 (citations omitted). Thus, Capella contends that collateral estoppel should not apply because "[i]ssues are not identical if the second action involves application of a different legal standard." *Id.* at 24 (quoting *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971)).

Several cases inform the Court's analysis, and each one is discussed in turn. First, in *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018), the Federal Circuit explained that "an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral

6

estoppel effect on all pending or co-pending actions." 890 F.3d at 1294; *id.* (noting that the affirmance "collaterally estops XY from asserting the patent in any further proceedings"). This is "because 'a patentee, having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his day in court,' and a defendant should not have to continue 'defending a suit for infringement of an adjudged invalid patent.'" *Id.* (quoting *U.S. Ethernet Innovations, LLC v. Tex. Instruments Inc.*, 645 Fed. App'x. 1026, 1028–30 (Fed. Cir. 2016)); *see also Intellectual Ventures*, 370 F. Supp. 3d at 256 ("In *XY*, the Federal Circuit held that an affirmance of an invalidity finding from the PTAB has a collateral estoppel effect on all pending actions in district court even though the district court and PTAB have different burdens of proof and claim construction standards." (emphasis in original)).

In reaching this conclusion, the *XY* court rejected the idea that it would be improper to give preclusive effect to PTAB opinions in district courts, *XY*, 890 F.3d at 1294, because of "the different standards of validity in the PTAB and the district court, the different burdens of proof, and the different standards of appellate review in this court," *id.* at 1300 (Newman, J., concurring in part and dissenting in part). *Intellectual Ventures* observed that such an outcome is, in fact, "necessitated by the IPR statutory scheme because if the PTAB finds that a claim is unpatentable during an IPR proceeding, 'the PTO is required to issue a certificate cancelling the claim.'" 370 F. Supp. 3d at 256 (quoting *In re Papst Licensing GmbH & Co. KG Patent Litig.*, 320 F.Supp.3d 132, 134 (D.D.C. 2018)). In *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), the Federal Circuit similarly rejected the argument "that because different standards apply in a PTO reexamination and a validity proceeding before the district court, the patent's invalidation in a reexamination does not have collateral estoppel effect." 721 F.3d at 1344. It concluded "there is no basis for distinguishing between the effects of a final, affirmed court decision determining invalidity and a final, affirmed PTO decision determining invalidity on a pending litigation." *Id.* Thus, while *XY* could be read as indicating that the binding effect of PTAB invalidation arises only from the fact that the basis of the lawsuit in court (the patent(s) at issue) has been destroyed, the broader language of the opinion suggests collateral estoppel effect should be given to PTAB invalidations even where the traditional elements of collateral estoppel

7

<mark>Case 3:20-cv-01858-EMC   Document 48   Filed 08/21/20   Page 8 of 11</mark>

are not technically satisfied.

Notably, in *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373 (Fed. Cir. 2016), the Federal Circuit concluded that the PTAB's construction of claims did not have preclusive effect in district courts because the court could not see how the "ordinary elements of issue preclusion are met" by the claim construction decisions of the Board. 828 F.3d at 1376. It explained:

> Because the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), the issue of claim construction under *Phillips* to be determined by the district court has not been actually litigated. Informatively, we have held that issue preclusion does not require the Patent Office to use the claim construction determined by a district court.

*Id.* But *Sky Hawke* did not diminish *XY*'s holding that preclusive effect must be given to the PTAB's decision on invalidity despite differences in the standard of *claim construction* or *validity*. Indeed, *Sky Hawke* emphasized that "administrative decisions by the U.S. Patent and Trademark Office *can* ground issue preclusion in district court when the ordinary elements of issue preclusion are met." *Id.* (emphasis added). Unsurprisingly, courts relying on *SkyHawke* have made clear that the lack of preclusive effect in the claim construction context does not undermine claim collateral estoppel of an invalidity decision. The PTAB's finding of invalidity should be entitled to particular deference, because there is a strong interest in finality. *See* 37 C.F.R. § 42.73(d)(3) ("A patent applicant or owner is precluded from taking action inconsistent with the adverse judgment, including obtaining in any patent . . . [a] claim that is not patentably distinct from a finally refused or canceled claim.").

The breadth of the binding effect on the PTAB's ruling on invalidity is illustrated in *Intellectual Ventures*. 370 F. Supp. 3d at 257. There, the PTAB invalidated an independent claim on grounds of obviousness. The defendant in the district court subsequently moved for summary judgment on the invalidity of a dependent claim, on the grounds that the plaintiff was collaterally estopped from asserting it. *Id.* at 253. The plaintiff argued that collateral estoped could not apply because the claims "must be evaluated separately," "the PTAB's lower standard of proof makes collateral estoppel inapplicable to the present case," and "the PTAB's broader claim

<mark>8</mark>

construction standard makes collateral estoppel inappropriate." *Id.* at 255. The court noted that "issue preclusion generally does not apply where a party seeking preclusion "has a significantly heavier burden than he had in the first action." *Id.* at 256 (quoting Restatement (Second) of Judgments § 28 (1982)). However, citing *XY*, it concluded that "an affirmance of an invalidity finding from the PTAB has a collateral estoppel effect on all pending actions in district court even though the district court and PTAB have different burdens of proof and claim construction standards." *Id.* The Court further noted that "for collateral estoppel to apply, the asserted unadjudicated claim need not be identical to the adjudicated claim." *Id.* (citing *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion.") and *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) ("Our precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply.")).

In *Ohio Willow Wood*, the Federal Circuit explained that "[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Ohio Willow Wood*, 735 F.3d at 1342; *see also Soverain Software*, 778 F.3d at 1319 ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion."). That reach of collateral estoppel applies to administrative decisions as well. In *MaxLinear*, the Federal Circuit similarly explained "that the collateral-estoppel effect of an administrative decision of unpatentability generally requires the invalidation of related claims that present identical issues of patentability." 880 F.3d at 1377. The court then remanded the case to the PTAB for a determination of whether the dependent claims "present[ed] materially different issues that alter[ed] the question of patentability, making them patentably distinct from" the independent claims which had been invalidated.

The question then is whether the undisputedly binding effect of a PTAB decision on the validity of the same patent should apply as well to the validity of substantially identical claims of a reissued patent. The breadth of the collateral estoppel effect afforded to a PTAB determination of

invalidity, *see XY*, *Fresenius*, and *Intellectual Ventures*, and the strong interest in affording such PTAB determinations finality suggest that it should.

Indeed, extending the logic of existing case law demonstrates the ineluctability of the collateral estoppel. Consider the following hypothetical: If an IPR proceeding were to be instituted against the reissued claims of '905 and '906 Patents, and the claims were deemed "substantially identical" to the original claims, the PTAB would be bound by collateral estoppel and, in light of its invalidation of the '368 and '678 Patent claims, would have to find the substantially identical claims of the reissued patents invalid. *See* 37 C.F.R. § 42.73(d)(3). There would be no "materially different issues that alter the question of patentability"; the validity of the two sets of patents would present "identical issues of patentability." *MaxLinear*, 880 F.3d at 1377. The PTAB's determination of invalidity of the '905 and '906 Patent claims would, in turn, be binding on this Court. *See XY*, 890 F.3d at 1294. The application of collateral estoppel is ultimately inescapable.

Finally, the other requirements of collateral estoppel are also met. For one thing, the issue of claim scope was litigated in the PTAB trial. *See* Docket No. 26-3 at 12-14 (Final Written Decision for '368 Patent rejecting Capella's arguments about the scope of the claim); Docket No. 26-8 at 14–16 (Final Written Decision for '678 Patent rejecting Capella's arguments about the scope of the claim). Cisco also asserts that there was "a full and fair opportunity to litigate the issue, since Capella addressed it before the Board, an appeal to the Federal Circuit, and further sought certiorari from the Supreme Court." Mot. at 16 (citing *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462 (2018)). That the standard for claim construction and burden of proof differ does not negate the full and fair opportunity to litigate the issue and prevent the application of collateral estoppel. *XY*, 890 F.3d at 1294. The scope of the claims was a "critical and necessary part of the judgment in the earlier action." *Littlejohn*, 321 F.3d at 923. As Cisco argues, "the issue [of the scope of the claims in the '368 and '678 patents] was necessary to decide the merits because had the Board (or Federal Circuit) agreed with Capella that the term 'port' was limited to 'fiber collimators,' then the claims could not have been invalidated by the presented prior art." Mot. at 16 (citing Docket No. 26-3 at 22-23 (Final Written Decision for '368 Patent

10

1 rejecting Capella's arguments about the scope of the claim); Docket No. 26-8 at 27–28 (Final
2 Written Decision for '678 Patent rejecting Capella's arguments about the scope of the claim)).
3       Accordingly, if the scope of the reissue claims is substantially identical to the scope of the
4 original claims, those claims would be invalid under principles of collateral estoppel. If the
5 reissue claims are in fact narrower than the original claims, Capella would not be entitled to pre-
6 issue damages pursuant to 35 U.S.C § 252. Under either scenario, Capella will not be entitled to
7 pre-issue damages. Accordingly, the Court **GRANTS** Cisco's Motion for Judgment on the
8 Pleadings.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Cisco's Motion for Judgment on the Pleadings; Capella may not seek pre-issue damages in this case.

This order disposes of Docket No. 35.

**IT IS SO ORDERED**.

Dated: August 21, 2020

_____
EDWARD M. CHEN
United States District Judge