David P. Enzminger (SBN: 137065)
denzminger@winston.com
Louis L. Campbell (SBN: 221282)
llcampbell@winston.com
WINSTON & STRAWN LLP
275 Middlefield Rd., Suite 205
Menlo Park, CA 94025
Telephone: (650) 858-6500
Facsimile: (650) 858-6550

Krishnan Padmanabhan (SBN: 254220)
kpadmanabhan@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone:   (212) 294-6700
Facsimile:   (212) 294-4700

Attorneys for Plaintiff
CISCO SYSTEMS, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> CAPELLA PHOTONICS, INC., <br><br> Defendant. <br><br> CAPELLA PHOTONICS, INC., <br><br> Counterclaimant, <br><br> vs. <br><br> CISCO SYSTEMS, INC., <br><br> Counter-Defendant. | Case No. 3:20-cv-01858-EMC <br><br> **PLAINTIFF CISCO SYSTEMS, INC.'S OPPOSITION TO DEFENDANT CAPELLA PHOTONICS, INC.'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL** <br><br> Date: November 19, 2020 <br> Time: 1:30 p.m. <br> Courtroom: Courtroom 5, 17th Floor <br> Judge: Hon. Edward M. Chen |

Case 3:20-cv-01858-EMC   Document 59   Filed 10/26/20   Page 2 of 20

# TABLE OF CONTENTS

**Page**

I.  Introduction .................................................................................................................... 1

II. Procedural Background ................................................................................................. 1

    A.  The Board invalidated the original '368 and '678 patents. Capella appealed, lost, and then instituted reissue proceedings. ............................................... 1

    B.  Cisco pursued declaratory judgment because it does not infringe the reissue patents. ............................................................................................................. 2

    C.  The Court decided "only a single aspect" of this case—that *even if* Capella later proves infringement, it could not recover pre-issue damages. .............. 2

III. Legal Standard ............................................................................................................... 4

IV. Capella Cannot Show That This Is an "exceptional" Case Justifying an Immediate Interlocutory Appeal. .................................................................................................... 5

    A.  An interlocutory appeal will not materially advance the ultimate termination of this action. ................................................................................................... 5

    B.  Capella does not offer a "controlling" issue of law for certification because Capella's issues could be mooted as this litigation proceeds. ...................... 8

    C.  There is no substantial ground for differences in opinion on the Court's order. ........ 10

        1.  There Is No Split Among Courts Regarding the Collateral Estoppel Effect of the PTAB's Invalidity Findings in District Court Proceedings. ................................................................................. 10

        2.  There Is No Split Among Courts Regarding the Presumption that Invalidation of Claims of the Same Scope Are Subject to Collateral Estoppel ..................................................................................... 11

V.  Conclusion ................................................................................................................... 14

OPPOSITION TO CAPELLA'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL
CASE NO. 3:20-CV-01858-EMC

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Ad Glob. Fund, LLC v. United States*,
   167 F. App'x 171 (Fed. Cir. 2006) ...................................................................................8

*Allen v. ConAgra Foods, Inc.*,
   No. 13-CV-01279-WHO, 2019 WL 1466889 (N.D. Cal. Feb. 6, 2019) ........................5

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   No. 11-CV-2910 EMC, 2012 WL 4892391 (N.D. Cal. Oct. 12, 2012)..........................6

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
   139 S. Ct. 462 (2018)................................................................................................1, 13

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
   711 F. App'x 642 (Fed. Cir. 2018) ................................................................................1

*Cascades Computer Innovation LLC v. RPX Corp.*,
   No. 12-CV-1143 YGR, 2015 WL 1383818 (N.D. Cal. Mar. 23, 2015) ........................4

*In re Cement Antitrust Litig.*,
   673 F.2d 1020 (9th Cir. 1981) ..............................................................................4, 5, 8

*Cent. Inst. for Experimental Animals v. Jackson Lab.*,
   No. 08-CV-05568 RMW, 2010 WL 1240760 (N.D. Cal. Mar. 26, 2010)...................14

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) .......................................................................................14

*DeLuca v. Farmers Ins. Exch.*,
   No. 17-CV-00034-EDL, 2019 WL 4260437 (N.D. Cal. Sept. 9, 2019)........................4

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
   No. 18-CV-02621-WHO, 2020 WL 1929250 (N.D. Cal. Apr. 21, 2020) .................4, 6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013)....................................................................................10

*Fujitsu Ltd. v. Tellabs, Inc.*,
   539 F. App'x 1005 (Fed. Cir. 2013) ...............................................................4, 7, 10

*Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*,
   450 F. App'x 978 (Fed. Cir. 2011) ................................................................................4

*James v. Price Stern Sloan, Inc.*,
   283 F.3d 1064 (9th Cir. 2002) .......................................................................................4

*Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*,
   403 F. Supp. 3d 571 (E.D. Tex. 2019)..................................................................................10, 11

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. 12-CV-03451-RMW, 2013 WL 3568314 (N.D. Cal. July 12, 2013) ................................4, 7

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
   561 F. App'x 909 (Fed. Cir. 2014) ..........................................................................................7, 9

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
   506 F. App'x 995 (Fed. Cir. 2013) ..............................................................................................4

*Sonoda v. Amerisave Mortg. Corp.*,
   No. 11-CV-1803 EMC, 2011 WL 3957436 (N.D. Cal. Sept. 7, 2011) ................................5, 6, 7

*Univ. of Virginia Patent Foundation v. General Elec. Col.*,
   792 F. Supp. 2d 904 (W.D. Va. 2011) ........................................................................................1

*Villarreal v. Caremark LLC*,
   85 F. Supp. 3d 1063 (D. Ariz. 2015) ..........................................................................................7

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................... *passim*

35 U.S.C. § 252.........................................................................................................................2

37 C.F.R. 42.73(d)(3) ...............................................................................................................13

**Other Authorities**

83 FR 51340-01 (Oct. 11, 2018).................................................................................................14

**Table of Abbreviations and Conventions**

| Term | Meaning |
|---|---|
| '368 patent | U.S. Patent No. RE42,368 (Dkt. 26-2) |
| '368 patent FWD | Final Written Decision, *Cisco Sys., Inc., v. Capella Photonics, Inc.*, IPR2014-01166, Paper 44 (PTAB Jan. 28, 2016) (Dkt. 26-3) |
| '678 patent | U.S. Patent No. RE42,678 (Dkt. 26-7) |
| '678 patent FWD | Final Written Decision, *Cisco Sys., Inc., v. Capella Photonics, Inc.*, IPR2014-01276, Paper 40 (PTAB Feb. 17, 2016) (Dkt. 26-8) |
| '905 patent | U.S. Patent No. RE47,905 (Dkt. 26-23) |
| '906 patent | U.S. Patent No. RE47,906 (Dkt. 26-24) |
| Board | Patent Trial and Appeal Board of the U.S. Patent and Trademark Office |
| Capella | Capella Photonics, Inc. |
| Cisco | Cisco Systems, Inc. |
| original patents | the '368 and '678 patents |
| reissue patents | the '905 and '906 patents |
| Ex. | Exhibit to the concurrently filed declaration of Krishnan Padmanabhan |

## I. Introduction

Immediate appellate review pursuant to § 1292(b) is only appropriate in "exceptional circumstances." *Univ. of Virginia Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 909 (W.D. Va. 2011) (citation omitted). As the petitioning party, Capella carries the burden of providing a "justif[ication] [for] departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id*. No such justification exists here, where Capella's questions will not materially advance this case, do not present controlling questions of law, and will not settle any difference of opinion among courts. In fact, an appeal at this juncture will only lead to delay, as this Court will be required to perform claim construction, address liability issues, and conduct a trial *regardless of the Federal Circuit's answers to Capella's questions* in the unlikely event it even accepts this appeal.

## II. Procedural Background

### A. The Board invalidated the original '368 and '678 patents. Capella appealed, lost, and then instituted reissue proceedings.

This is the second bout between Cisco and Capella. Six years ago, Capella accused Cisco of infringing its '368 and '678 patents—two patents that describe purported inventions in optical communication. *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, Case No. 3:14-CV-03348-EMC, Dkt. 1 (Feb. 12, 2014). During the first litigation Cisco sought *inter partes* review to challenge the validity of each asserted claim of the '368 and '678 patents before the Patent Trial and Appeals Board. *See Cisco Sys., Inc., v. Capella Photonics, Inc.*, IPR2014-01166 and IPR2014-01276. The Board ultimately found all asserted claims of the original patents unpatentable over the prior art and invalidated them. *See* '368 patent FWD; '678 patent FWD.

Capella appealed these decisions to no avail. The Board first denied rehearing. *Cisco Sys., Inc., v. Capella Photonics, Inc.*, IPR2014-01166, Paper 46 (PTAB June 29, 2016); IPR2014-01276 (PTAB July 5, 2016). Capella then appealed to the Federal Circuit, and the Federal Circuit affirmed the Board's findings. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 Fed. App'x 642 (Fed. Cir. 2018). And the Supreme Court denied cert. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462 (2018). That was the end of the line for the original patents. This Court then dismissed Capella's first infringement action.

This history lays the groundwork for the present case because after the Board and Federal Circuit confirmed the invalidity of the original patent claims, Capella instituted reissue proceedings for both the '368 and '678 patents. Capella amended all claims, including both the previously asserted (and invalidated) claims, and the previously unasserted claims, which were never challenged or invalidated. *See* Dkt. 26-5; Dkt. 26-9; *see also* Dkt. 53 (Certification Motion) at 15 n.7; Dkt. 58 (Motion for Reconsideration). And in March 2020, the Patent Office reissued the asserted '905 and '906 patents from the original '368 and '678 patents, respectively, with amended claim language.

### B. Cisco pursued declaratory judgment because it does not infringe the reissue patents.

Expecting a second complaint from Capella upon reissuance of the '905 and '906 patents, Cisco filed for declaratory judgment of non-infringement to commence this case. Dkt. 1 (Original Complaint); Dkt. 26 (First Amended Complaint). Capella not only denied that Cisco is entitled to declaratory relief, but it also countersued for infringement of the reissue patents and sought damages going back to 2014. *See* Dkt. 29 (Capella's Counterclaims) ¶ 26. In doing so, Capella alleged that "[o]ne or more claims of" the '905 and '906 patents are "substantially identical to one or more claims of the original" '368 and '678 patents, respectively. *Id.* ¶¶ 18, 21.

### C. The Court decided "only a single aspect" of this case—that *even if* Capella later proves infringement, it could not recover pre-issue damages.

Capella's desire for six years of damages presented a problem. Because pre-issue damages are available only where "the claims of the original and reissued patents are substantially identical," Capella could only recover damages prior to the reissue date (March 17, 2020) if the asserted reissue claims are substantially identical to the original claims. *See* 35 U.S.C. § 252. And while Capella insists that they are, Cisco disagrees and asserts that the reissue claims are substantively narrower and not substantially identical. Cisco thus moved for judgment that Capella was barred from recovering pre-issue damages under 35 U.S.C. § 252. Dkt. 35 (Cisco's Rule 12(c) Motion). The logic was simple. If Cisco was right, and the reissue claims are not "substantially identical," then Capella cannot recover pre-issue damages. But even if Cisco were wrong, then Capella would still be barred from pursuing reissue claims that were in fact substantially identical to previously invalidated claims, because

Capella already had a full and fair chance to litigate claims of that scope, and the Federal Circuit upheld the determination that the original claim scope was unpatentable. *See* Dkt. 35 at 18. In short, Capella was caught in a catch-22; its reissue claims could not be both patentably distinct from, and "substantially identical" to, the invalidated original claims. Those claims have to be one or the other.

The Court agreed with Cisco and "resolve[d] only a single aspect of the case"—that regardless of whether the reissue and original claims were substantially identical, Capella has no right to pre-issue damages. Dkt. 48 at 1, 5 (declining to answer whether the two sets of claims were "substantially identical"). Either the scope of the reissue claims was materially different, and Capella would be barred from pre-issue damages, or they are substantially identical and Capella would be barred from pursuing claims with the same scope as previously invalidated claims. *Id.* at 11. The ruling acknowledged that the Court would determine which of these two paths forward is appropriate at a later point in the case. *See id.*

Capella now seeks to appeal *the portion* of the Court's order on pre-issue damages that determined that collateral estoppel would apply to claims that are substantially identical to the previously invalidated claims.[1] The claim construction process—an appropriate juncture to determine which reissue claims are substantially identical—has already begun. Dkt. 37 at 2. And both parties have recently served, but have yet to answer, discovery on which asserted claims they believe are substantially identical to the original claims. *See* Ex. A (Capella's First Set of Interrogatories) at 2; Ex. B (Cisco's Second Set of Interrogatories) at 5. Capella has made clear that it contends that several of the reissue claims are not substantially identical to any previously asserted or invalidated claims. *See* Dkt. 58 at 3–4; Dkt. 53 at 15 n.7. Simply put, important legal determinations and discovery regarding the scope of, and relationship between, the original and reissue claims are forthcoming. If the claim construction process, or discovery, reveals that any reissue claim is not substantially identical to an original claim, or fails to present the same invalidity issues, then collateral estoppel will not

---

[1] The Federal Circuit cannot be asked to consider the availability of collateral estoppel in isolation, since, as the Court's order recognizes, it is tightly intertwined with the issue of whether the reissue claims are "substantially identical" to the original claims, and the availability of pre-issuance damages under § 252. *See* Dkt. 48 at 3, 5, 11.  There is no reasonable basis to disconnect these issues, especially given the nature of the Court's ruling, and the stage of litigation.

apply.[2]

## III. Legal Standard

District judges may certify for appeal an otherwise unappealable order when they are "of the opinion that such order [(i)] involves a controlling question of law [(ii)] as to which there is substantial ground for difference of opinion and [(iii)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981); *Fujitsu Ltd. v. Tellabs, Inc.*, 539 Fed. App'x 1005, 1006 (Fed. Cir. 2013). Capella must show each requirement. *See DeLuca v. Farmers Ins. Exch.*, No. 17-CV-00034-EDL, 2019 WL 4260437, at *4 (N.D. Cal. Sept. 9, 2019).

Capella carries a heavy burden because courts reserve certification "only [for] exceptional situations … [that] would avoid protracted and expensive litigation." *See Realtek Semiconductor Corp. v. LSI Corp.*, No. 12-CV-03451-RMW, 2013 WL 3568314, at *2 (N.D. Cal. July 12, 2013) (citation omitted). Courts thus construe the statute "narrowly" and "strictly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-CV-1143-YGR, 2015 WL 1383818, at *2 (N.D. Cal. Mar. 23, 2015). As a result of these burdens, interlocutory appeal is "granted sparingly and with discrimination." *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC*, 450 Fed. App'x 978, 979 (Fed. Cir. 2011) (citation omitted).

And at its core, certification is "entirely discretionary"—both at the district court and at the appellate level—and may be denied or refused **even if** Capella could show "exceptional" circumstances. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL 1929250, at *2 (N.D. Cal. Apr. 21, 2020); *Schwendimann v. Arkwright Advanced Coating, Inc.*, 506 Fed. App'x 995, 996 (Fed. Cir. 2013) ("Whether to accept an interlocutory appeal is a decision solely within our discretion."); *Green Edge*, 450 Fed. App'x at 979 ("Ultimately, this court must exercise its own discretion in deciding whether it will grant permission to appeal interlocutory orders."). In part, this is because the courts "discourage piece-meal appeals because most often such

---

[2] Cisco alleges estoppel for reasons beyond the PTAB's invalidation of original claims. But those additional estoppel arguments were not the subject of Cisco's Rule 12(c) motion (Dkt. 35) or the Court's order (Dkt. 48) that Capella now seeks to certify.

1  appeals result in additional burdens on both the court and the litigants." *Green Edge*, 450 Fed. App'x
2  at 979 (citation omitted).

### IV. Capella Cannot Show That This Is an "exceptional" Case Justifying an Immediate Interlocutory Appeal.

To be "exceptional," this case must present a procedural posture that would be materially advanced by immediate appeal, and a legal question that controls the case and answers questions dividing the courts. Even if Capella's brief presents an interesting question, that does not make this case exceptional for purposes of interlocutory appeal. Capella's questions—which may soon be moot—are better raised (if ever) upon a full appeal. As the case stands today, there is no basis for interlocutory appeal as nothing is "exceptional" here.

#### A. An interlocutory appeal will not materially advance the ultimate termination of this action.

An interlocutory appeal materially advances the ultimate termination of a case when it "would avoid protracted and expensive litigation." *Sonoda v. Amerisave Mortg. Corp.*, No. 11-CV-1803 EMC, 2011 WL 3957436, at *1 (N.D. Cal. Sept. 7, 2011) (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026). The key inquiry is whether allowing the appeal "would minimize the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings." *Allen v. ConAgra Foods, Inc.*, No. 13-CV-01279-WHO, 2019 WL 1466889, at *3 (N.D. Cal. Feb. 6, 2019) (citation omitted).

An immediate appeal cannot do so here. Neither a complete win nor loss on appeal would end this case—or even bring it any closer to trial. Rather, certification, at this stage, would prolong resolution—the exact opposite of the statute's purpose. *See Deluca*, 2019 WL 4260437, at *7 (refusing certification where appeal "could delay the ultimate termination" of the case). No matter how the Federal Circuit decides the questions posed by Capella's brief, significant issues—including claim construction, liability[3], and damages—will remain for this Court to decide. So one of two things will

---

[3] Liability in this case will include at least the issues of infringement, validity, and various issues related to enforceability, such as estoppel and prosecution laches. *See* Dkt. 26 at 14; Dkt. 32 (Cisco's Answer to Counterclaims) at 25–26.

occur if this Court certifies Capella's questions and the Federal Circuit accepts them. Either this Court will stay the action pending appeal, as allowed under 28 U.S.C. § 1292(b), or it will not. With the former, the appeal will undisputedly delay the case by pausing discovery and claim construction—two independent necessities for both parties' claims. In that case, when "an interlocutory appeal would actually delay the conclusion of the litigation, the Court should not certify the appeal." *See Sonoda*, 2011 WL 3957436, at *2 (citation omitted). In the alternative, if the Court does not stay the case but Cisco ultimately prevails on claim construction by demonstrating that the reissue claims and original claims are materially different, then Capella's request for interlocutory appeal ***could not*** advance this case, because the issue it seeks to address will be moot, and the parties would have unnecessarily engaged in parallel appellate proceedings. But in either world, there is no "promise"—or even possibility—that an appeal will "advance the time for trial or shorten the time required for trial."[4] *See Finjan*, 2020 WL 1929250, at *6.

Importantly, Capella itself insists that liability issues will persist no matter the outcome of its appeal. Capella contends that certain of the presently asserted reissue claims stem from original claims that were not asserted in prior litigation, and thus not invalidated by the Board. *See* Dkt. 53 at 15 n.7 ("The PTAB's final written decisions attest that not every claim in the original patents was being reviewed and, as a result, not every claim was invalidated."); Dkt. 58 at 3–4. As a result, Capella states that "[a]t a minimum, the Court's alternative collateral estoppel rationale cannot possibly apply to reissue claims that correspond to original claims never invalidated by the PTAB" (*Id.*), and this Court, and the parties, will be obligated to undertake all of the same steps—claim construction, fact and expert discovery, summary judgment, and trial—for those claims regardless of what the Federal Circuit says. In a case such as this, where the litigation would be "conducted in substantially the same manner regardless of [certification], the appeal cannot be said to materially advance the ultimate termination of the litigation." *Sonoda*, 2011 WL 3957436, at *1–2 (refusing certification when a successful appeal, at best, would eliminate only a portion of plaintiffs' claims while leaving others to be decided by the district court) (citation omitted); *see also Astiana v. Dreyer's Grand Ice Cream*,

---

[4] And should the Court find the reissue claims and original claims are not substantially identical in the upcoming claim construction proceedings, does Capella intend to appeal that as well?

1    *Inc.*, No. 11-CV-2910 EMC, 2012 WL 4892391, at *4 (N.D. Cal. Oct. 12, 2012) (appeal would not
2    materially advance ultimate resolution when appellate ruling would not affect other pending claims
3    and issues in the case); *Green Edge*, 450 Fed. App'x at 980 (appeal would not materially advance case
4    "because whatever the outcome this matter would have to go back to the district court for trial").

5          At this stage, the Court's ruling, and thus Capella's request, addresses only the period for which
6    Capella may pursue liability—"a single aspect of the case," Dkt. 48 at 1, and one ill-suited for
7    certification when the primary issue, liability, remains entirely unanswered. *See Fujitsu*, 539 Fed.
8    App'x at 1007. And when the "scope of … potential damages exposure" alone is the key inquiry—
9    especially when liability issues are still in play—the Court should deny certification. *See Sonoda*, 2011
10   WL 3957436, at *1–2 ("[W]ith respect to the scope of damages, the Court has not found … any cases
11   suggesting that the scope of exposure to damages alone is sufficient to create the exceptional
12   circumstances necessary for an interlocutory appeal."). Likewise, the mere "*possibility* of avoiding
13   *some* liability"—which would be the end result for Cisco here—clashes with the very purpose of
14   certification. *See Realtek*, 2013 WL 3568314, at *3 (emphasis modified). And Capella's questions,
15   even if accepted as appropriate, only ask about the **hypothetical** scope of damages *if* it prevails at
16   claim construction and *if* Cisco is later found to infringe. But if this lawsuit does not move as Capella
17   hopes, then the answers on appeal are of no use to this Court. Capella's questions are thus
18   "speculat[ive]" and "built upon several assumptions" that need no answer now. *See Villarreal v.*
19   *Caremark LLC*, 85 F. Supp. 3d 1063, 1071 (D. Ariz. 2015).

20         Capella's arguments in favor of material advancement do not move the needle. Capella first
21   argues that if it cannot recover damages for products sold only pre-issuance, then Cisco will inevitably
22   seek to exclude those products from this case. Dkt. 53 at 17–18. But that would be true anytime a party
23   wins an issue limiting the damages period, as prescribed by Sections 252 and 287 or a discovery issue.
24   There is no precedent for automatically granting interlocutory appeal of any ruling limiting a damages
25   period. Capella then argues that the pre-issue damages question will "inform[] the parties' respective
26   settlement positions." *Id.* at 18. But this "very generally applicable observation that an appeal now
27   'could' promote settlement by aiding in 'the correct valuation of the lawsuit'" is far from sufficient to
28   demonstrate that the appeal would materially advance the case. *Rembrandt Soc. Media, LP v.*

*Facebook, Inc.*, 561 Fed. App'x 909, 911 (Fed. Cir. 2014) (Federal Circuit denying request for interlocutory appeal where petitioner argued that the appeal could promote settlement). And even if the issues in Capella's appeal were decided by the Federal Circuit, correct valuation of the lawsuit will still require claim construction to determine whether the claims are substantially identical.

Nor is the potential to "create efficiencies in other cases," Dkt. 53 at 19, helpful in Capella's bid to satisfy this element of the test. The Court must still find that an immediate appeal would materially advance ***this*** action no matter its effect on others. 28 U.S.C. § 1292(b); *see Ad Glob. Fund, LLC v. United States*, 167 F. App'x 171, 172 (Fed. Cir. 2006) (granting petition but only after concluding that "the order meets the statutory requirements of 28 U.S.C. § 1292(b)"). In addition, the issue of collateral estoppel has not been raised in two of the three parallel cases, and has yet to be addressed by the court in the third of those cases. Any claim of "efficiencies" seems far-fetched, since Capella has provided no indication that it intends to conserve the courts' or parties' resources in those parallel litigations, all of which were filed the same day as Cisco's declaratory judgment complaint, by seeking a stay or otherwise waiting for the Federal Circuit's decision before advancing those cases. And Capella's proposed appeal would not help ***resolve*** any parallel case because (i) questions of claim construction, liability, and damages still remain in those cases regardless of what the Federal Circuit might decide, and (ii) pursuant to Capella's own contention, there are asserted claims that would not be subject to collateral estoppel.[5]

**B.  Capella does not offer a "controlling" issue of law for certification because Capella's issues could be mooted as this litigation proceeds.**

A question is "controlling" if its resolution on appeal "could materially affect the outcome of litigation in the district court." *Deluca*, 2019 WL 4260437, at *4 (citing *In re Cement Antitrust Litig.*, 673 F.2d at 1026). Indeed, interlocutory appeal "was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions

---

[5] The asserted claims here mirror the asserted claims in Capella's parallel cases against Fujitsu and Infinera. *See* Exs. C (Excerpt of Infringement Contentions against Infinera), D (Infringement Contentions against Fujitsu). Capella filed a third parallel action against Ciena involving the same patents-in-suit, but Capella has not yet served infringement contentions there. *See* Dkt. 26-20 (Ciena Complaint).

which, if decided in favor of the appellant, would end the lawsuit." *Id.* (citing *United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959)). While the issue need not be dispositive, at a minimum, there must be "some immediate effect on the course of litigation and result in some savings of resources." *Deluca*, 2019 WL 4260437, at *4 (citation omitted).

Capella's questions would have no "immediate effect" here and are thus not controlling. *Id.* And the reason is simple: Capella is asking for answers to questions that cannot be answered right now. As Capella has argued, and the Court's order on pre-issuance damages acknowledges, "the determination of the issue of substantial identicality involves patent claim construction and can only be made after the claim construction process and related *Markman* hearing."[6] Dkt. 38 at 2. Any appeal may be mooted as this litigation unfolds, particularly when the Court resolves claim construction. If this Court ultimately finds that the reissue claims are substantively different in scope from the original claims, then the time spent on appeal would have been an exercise in futility. *See* Dkt. 48 at 5. Additionally, several of the claim constructions Cisco seeks would render the asserted claims invalid or not infringed, which would similarly moot the need for an appeal. And in any event, Capella's questions cannot be "controlling" issues of law, because Capella maintains that "[a]t a minimum, the Court's alternative collateral estoppel rationale cannot possibly apply to reissue claims that correspond to original claims never invalidated by the PTAB." Dkt. 53 at 15 n.7. Simply put, Capella contends that regardless of whether it wins or loses at the Federal Circuit, that ruling would not touch those reissue claims that align with original claims that stand valid. Claim construction and fact and expert discovery, as well as dispositive motions and trial, would still need to run their course.

The Federal Circuit itself is wary of inviting appellate review when its rulings "could easily turn out to have no consequences," particularly when, like here, "[a]fter the appellate decision, proceedings on liability could result in a determination of no liability, mooting any issue of damages." *Rembrandt*, 561 Fed. App'x at 912 (Fed. Cir. 2014). Indeed, "a question regarding the theory on which damages may be recovered cannot be controlling where the issue of liability remains undecided."

---

[6] If Capella wishes to expedite claim construction to determine the collateral estoppel effect of the Court's order, Cisco would be open to discussing the possibility of such schedule adjustments with Capella.

*Fujitsu*, 539 Fed. App'x at 1007 (lost profits issue was not a controlling question when infringement liability was still in question). These principles are instructive here: claim construction may ultimately moot the question of pre-issue infringement if Cisco prevails.

### C. There is no substantial ground for differences in opinion on the Court's order.

Capella argues that the Court's order on pre-issuance damages raises two separate points of law on which there are substantial grounds for difference of opinion among courts: (i) whether PTAB invalidity determinations have collateral estoppel effect in district court, due to the difference in evidentiary standards between the two proceedings, and (ii) whether a finding that claims are "substantially identical" necessarily means that the original claims and amended claims present "identical issues of patentability." Dkt. 53 at 5, 11. Capella mischaracterizes both this Court's ruling, and the body of case law in manufacturing its supposed grounds for difference. The simple reality is that this Court's ruling on pre-issuance damages addresses a factually unique scenario, is faithful to the Federal Circuit's jurisprudence, and applies common sense. Of course, even if there is a split among courts on the particular issues raised by Cisco's Rule 12(c) motion and the Court's order, it matters little, since the other two factors required for certification cannot be satisfied.

#### 1. *There Is No Split Among Courts Regarding the Collateral Estoppel Effect of the PTAB's Invalidity Findings in District Court Proceedings.*

Capella's brief altogether misses the point on this supposed grounds for difference. Relying on a string of general cases that discuss collateral estoppel in the context of parallel proceedings with different evidentiary standards, Capella fails to identify any case in which a PTAB's invalidity finding is not given preclusive effect by a district court. Rather, the Federal Circuit's precedents make clear that the difference in evidentiary standards between a PTAB and district court proceeding cannot undo a PTAB's invalidity finding. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013). This Court's opinion recognized the same. Dkt. 48 at 7.

The two cases that Capella identifies as exemplifying the supposed split among courts are highly distinguishable, and the Court already considered the arguments presented in those cases. Dkt. 48 at 7. In *Papst*, the court considered whether PTAB final written decisions invalidating U.S. patents 8,504,746 and 8,966,144 should have collateral estoppel effect against *a completely different patent,*

*with different claims*. See *Papst Licensing GmbH & Co., KG v. Samsung Elecs. Co.*, 403 F. Supp. 3d 571, 601–02 (E.D. Tex. 2019). In contrast, this case considers original patents with claims that the PTAB invalidated, and reissue patents which amend those invalidated claims in a manner that the patentee itself contends is so minor that it renders the claims substantially identical to the invalidated claims. Even the cases that Capella cites recognize the issue-preclusive effect of the PTAB's invalidation, and Federal Circuit's affirmance, of a patent claim. *Id*. at 601 ("A final judgment from the PTAB on the invalidity of a patent claim has an issue-preclusive effect on any pending actions involving that patent.") (citing *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018), on which this Court's order relies). Capella's other cited decision, *Sanofi*, dealt with whether invalidations at the PTAB, which were still subject to appeal, should be given collateral estoppel effect in district court proceedings. *Sanofi-Aventis U.S. LLC v. Mylan GmbH*, No. 17-CV-9105-SRC, 2019 WL 4861428, at *1 (D.N.J. Oct. 2, 2019). Of course, that situation is irrelevant here, where Capella appealed the PTAB's invalidation of the original patents to the Federal Circuit, which affirmed, and again to the Supreme Court, which denied cert. There is no genuine split among the district courts as Capella contends.

        2.     *There Is No Split Among Courts Regarding the Presumption that Invalidation of Claims of the Same Scope Are Subject to Collateral Estoppel.*

Capella fails to demonstrate any actual differences in opinion among district courts with respect to its second supposed issue. Rather, Capella relies on a single non-precedential final written decision from the Patent Trial and Appeals Board (*ContentGuard*) that stands for the unremarkable proposition that a patentee can take advantage of a procedure before the Board to amend a challenged claim in a manner that establishes that the amended claim is substantially identical to a challenged claim that is found invalid. Dkt. 53-1 at 69–72. That decision presents facts and procedures highly distinct from those before the Court here, and fails to establish any grounds for difference between district courts that will be resolved by an interlocutory appeal.

In *ContentGuard*, the patentee and challenger were engaged in parallel litigation before the PTAB and the Eastern District of Texas. Dkt. 53-1 at 4, 26. In its institution decision, the PTAB adopted a construction of "meta-right" for original claim 1 that did not contain the limitations adopted

by the Eastern District of Texas in that court's *Markman* Order. Ex. E (E.D. Tex. *Markman* Order); Ex. F (*ContentGuard* Institution Decision) at 15–17. ContentGuard filed a motion before the Board to amend original claim 1, and replace it with claim 37 which incorporated the construction of "meta-right" issued by the Eastern District of Texas. Ex. G (*ContentGuard* Patent Owner's Contingent Motion to Amend) at 2–3, 23–25. ContentGuard's motion to amend also requested, pursuant to the PTAB's IPR procedure, a finding that amended claim 37 and original claim 1 were substantially identical under Section 252. *Id*. at 23–25.

When considering whether amended claim 37 would be substantially identical to original claim 1, the PTAB adopted the Eastern District of Texas's construction for "meta-right." Dkt. 53-1 at 70–72. Importantly, in making that adoption, and explaining why it had not used that construction in its decision to institute, the PTAB "observe[d] that the parties' arguments and supporting evidence submitted [in the IPR proceeding] are different than those presented in the related district court case." Dkt. 53-1 at 26. The PTAB also recognized that the parties' dispute before the district court focused on different issues than those before the PTAB. *Id*. ("Notably, before the U.S. District Court for the Eastern District of Texas, the parties' dispute regarding the claim term 'meta-right' centered on whether the construction of this claim term should include a 'data structure.'"). In *ContentGuard*, the PTAB's construction of "meta-right" in the decision to institute and the district court's construction were different because the proposals and points of contention in the two forums were different.

By contrast, here, Capella argued before the PTAB during *inter partes* review that "port" means "fiber collimator port" and excludes "circulator port[s]." *See* Dkt. 26-18 (Capella's Patent Owner Preliminary Response in '368 IPR) at 34–39; Dkt. 26-19 (Capella's Patent Owner Preliminary Response in '678 IPR) at 35–40. The PTAB rejected that construction in its decision to institute. '368 patent FWD at 12–14; '678 patent FWD at 14–16. Rather than amend its claims using the process provided for by statute and outlined by the PTAB practice rules, Capella appealed to the Federal Circuit insisting that its positions before the PTAB were correct, *i.e.*, that "port" means "fiber collimator port" and excludes "circulator port[s]," and lost. Ex. H (*Capella Photonics, Inc. v. Cisco Sys., Inc.*, C.A. 16-2394, Principal Brief for Appellant) at 26–35. And Capella sought further appeal to the Supreme Court, but was denied cert. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462

(2018). At that point, the original claims were forever dead. Capella now seeks to construe reissue claims, which were amended to include the limitation which was explicitly considered and rejected (*i.e.*, "port" means "fiber collimator port" and excludes "circulator port[s]"), *and* say those amended reissue claims are "substantially identical" to the original (and invalid) claims. Unlike *ContentGuard*, Capella made exactly the same arguments before the PTAB, the Federal Circuit, and now again before the district court in this case. *See e.g.*, Dkt. 38 (Capella's Opposition to Rule 12(c) Motion) at 12–18; Dkt. 26-18 at 34–39; Dkt. 26-19 at 34–40. And of course, unlike *ContentGuard*, this Court will consider the scope of both Capella's original claims and reissue claims under *Phillips*. If the scope is the same—as Capella insists—then Capella has already fully pursued, and exhausted, its opportunities with respect to claims of that scope when it pursued the original claims, and those claims were invalidated. To hold otherwise, and give Capella a proverbial second bite at the apple, would render the rulings of the PTAB, Federal Circuit, and Supreme Court meaningless.

Further, in *ContentGuard* the patentee pursued an amended claim and confirmed that the amended claim was "substantially identical" to its original claim *before* a final written decision of the Board. By contrast, Capella only pursued its amended claim *after* the Board's final written decision.[7] *See* Dkt. 26-3 and 26-8 (Final Written Decisions dated Jan. 28, 2016); 26-23 and 26-24 ('905 and '906 patents showing reissue applications dated Jun. 29, 2018). Because Capella offered its amended claims after a final decision of the Board, Capella was "precluded from taking action inconsistent with" the Board's final decision, including pursuing any claims that were not "patentably distinct from [its] finally refused or canceled claim[s]," and was required to represent as much to the Patent Office. 37 C.F.R. 42.73(d)(3). By offering its amendments before the Board's final decision, the patent owner in *ContentGuard* did not face those same restrictions.

And even if there were some tension between the PTAB's *ContentGuard* ruling and this Court's order (which there is not), "the mere fact that the Federal Circuit has not yet ruled on this issue directly is insufficient to establish a substantial ground for difference of opinion."[8] *Cent. Inst. for*

---

[7] In fact, Capella only pursued its amended claims after the Federal Circuit affirmed the PTAB's final written decision invalidating its original claims. Dkt. 26-4 (Fed. Cir. Opinion dated Feb. 12, 2018).
[8] Of course, if the legal question at issue is whether collateral estoppel applies because the PTAB and

*Experimental Animals v. Jackson Lab.*, No. 08-CV-05568-RMW, 2010 WL 1240760, at *6 (N.D. Cal. Mar. 26, 2010). "To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (citation omitted). "However, 'just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal.'" *Id.* (citation omitted). Indeed, "[a] party's strong disagreement with the Court's ruling is not sufficient for there to be a 'substantial ground for difference.'" *Id.* Here, this Court has been the first to rule on this particular factual scenario. And by applying the Federal Circuit's guidance regarding the estoppel effect of the PTAB's judgments, this Court determined that Capella could not pursue claims directed to nothing more than what it already lost. Dkt. 48 at 5–11 (citing *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282 (Fed. Cir. 2018)). There simply is no division on this issue, and Capella cannot meet the high burden required to justify interlocutory appeal.

## V.   Conclusion

Capella's proposed interlocutory appeal will not materially advance the issues in this case, does not present a controlling issue of law, and fails to identify any actual split among courts. And regardless of how the Federal Circuit might respond to Capella's questions (should it even accept an appeal), the residual work left for this Court, and the parties, will be the same. For all these reasons, Cisco respectfully requests that the Court deny Capella's motion to certify.

---

district courts used different claim construction standards—broadest reasonable interpretation and *Phillips* respectively—the relevance of that question is short lived. The *Phillips* standard has been applied to all *inter partes* review petitions filed after November 13, 2018. *See* 83 FR 51340-01 (Oct. 11, 2018).

| | | |
|---|---|---|
| 1 | Dated: October 26, 2020 | WINSTON & STRAWN LLP |
| 2 | | By: */s/ K. Padmanabhan* |
| 3 | | David P. Enzminger |
| | | Krishnan Padmanabhan |
| 4 | | Louis L. Campbell |
| 5 | | Attorneys for Plaintiff |
| | | CISCO SYSTEMS, INC. |