UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAPELLA PHOTONICS, INC.,<br><br>　　　　Defendant. | Case No. 20-cv-01858-EMC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**<br><br>Docket No. 53 |

　　Cisco Systems, Inc. ("Cisco") sued Capella Photonics, Inc. ("Capella") seeking a declaration of noninfringement of Cappela's patents, and Capella counterclaimed for patent infringement. On August 21, 2020, the Court granted Cisco's motion for judgment on the pleadings (the "Order"), concluding that Capella cannot seek damages for alleged infringement that took place prior to the reissue of the relevant patents. *See* Docket No. 48 ("Order").

　　Pending before the Court is Capella's motion to certify this Court's Order granting Cisco's motion for judgment on the pleadings for interlocutory appeal under 28 U.S.C. § 1292(b). *See* Docket No. 53 ("Cert. Mot."). For the following reasons, Cisco's motion to certify is **DENIED**.

## I. BACKGROUND

As described in Cisco's motion for judgment on the pleadings:

> The Capella patents describe a purported invention in the field of optical communication. In particular, they describe a purportedly improved "optical add-drop multiplexer." An "optical add-drop multiplexer" is a component in a fiber-optic network that 1) receives light signals transmitted over optical fibers over different wavelength "channels," 2) removes ("drops") and inserts ("adds") light signals on selected channels while letting the signals on other channels "pass through," and 3) transmits the add and pass-through channels to the next destination.

Docket No. 35 ("MJOP") at 2–3 (citations omitted).

This is the second lawsuit between the parties. In 2014, Capella alleged infringement of two of its patents by Cisco: Patent Nos. RE42,368 (the "'368 Patent") and RE42,678 (the "'678 Patent"). *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, Case No. 3:14-cv-03348-EMC (N.D. Cal. Feb. 12, 2014). Cisco successfully instituted *inter partes* review during the prior case, challenging claims of the '368 Patent and the '678 Patent. *See* Docket No. 1 ("Compl.") ¶¶ 16, 31.

As to the '368 Patent, the Patent Trial and Appeal Board (PTAB) issued a final written decision cancelling claims 1-6, 9-13, and 15-22 as obvious over the prior art. *Id.* ¶ 16; *see also* Docket No. 26-3 ("'368 IPR Order"). The cancellation was affirmed by the Federal Circuit, after which Capella pursued reissue proceedings for the '368 Patent, and Patent No. RE47,905 (the "'905 Patent") was issued on March 17, 2020. Docket No. 26 ("FAC") ¶ 17–19. Cisco contends that "[d]uring the course of reissue proceedings, Capella represented that claims of the '905 Patent have the same scope as claims of the '368 Patent that Capella accused Cisco of infringing in the Prior Litigation." *Id.* ¶ 4.

As to the '678 Patent, the PTAB also issued a final written decision cancelling claims 1-4, 9, 10, 13, 17, 19-23, 27, 29, 44-46, 53, and 61-65 as obvious over the prior art. *Id.* ¶ 6; *see also* Docket No. 26-8 ("'678 IPR Order"). The cancellation was also affirmed by the Federal Circuit. *Id.* ¶ 6. Subsequently, Capella pursued reissue proceedings for the '678 Patent, and U.S. Patent No. RE47,906 (the "'906 Patent") was issued on March 17, 2020 (the same day that the '905 Patent issued). *Id.* ¶ 33–34.

A.  Procedural Background

Cisco sued Capella on March 16, 2020 seeking a declaration that Cisco's products do not infringe the '905 and '906 Patents. *See* Compl. Cisco amended its complaint on June 1, 2020. *See* FAC. On June 15, 2020, Capella filed an answer and counterclaim alleging infringement going back to at least 2014, six years prior to the reissuance of the '905 and '906 Patents. *See* Docket No. 29 ("Countercl.") ¶ 26.

On August 21, 2020, the Court granted Cisco's motion for judgment on the pleadings, holding that the PTAB's invalidation of certain claims in the '368 and '678 Patents (the "Original

Patents") precludes Capella from recovering pre-issuance damages for Cisco's alleged infringement of "substantially identical" claims in the '905 and '906 Patents (the Reissued Patents"). *See* Order at 5. On October 12, 2020, Capella filed the pending motion to certify the Order granting Cisco's motion for judgment on the pleadings for appeal to the Federal Circuit pursuant to 28 U.S.C. § 1292(b). Cert. Mot.

## II. MOTION TO CERTIFY

A party seeking to file an interlocutory appeal must show that (1) the Court's order "involves a controlling question of law;" (2) "there is substantial ground for difference of opinion" as to the that question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687–88 (9th Cir. 2011).

Here, Capella seeks to certify to the Federal Circuit two questions of law that it contends are integral to the Court's holding that the PTAB's invalidation of certain claims in the Original Patents precludes Capella from recovering pre-issuance damages for the Reissued Patents. Order at 5. **First**, Capella seeks to appeal the Court's conclusion that the PTAB's invalidation of claims in *inter partes* review has collateral estoppel effect upon district court litigation with respect to the Reissued Patents. Order at 7-8. **Second**, Capella seeks to appeal the Court's conclusion that "claims that are substantially identical to previously invalidated claims are also invalid." Order at 5, 9–11.

The Court finds that there is no substantial ground for difference of opinion as to either of these questions.[1]

A.   Substantial Grounds for Difference of Opinion.

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 28 U.S.C. § 1292(b)). A substantial ground for difference of opinion may be found where there is a "novel legal issue[ ] . . . on which fair-minded jurists

---

[1] Because there is no substantial ground for difference of opinion as to either of these questions, the Court need not address the other two § 1292 factors.

3

might reach contradictory conclusions," *Reese*, 643 F.3d at 688, where there is "an intra-district split" regarding the issue, *Asis Internet Servs. v. Active Response Grp.*, No. C07 6211 TEH, 2008 WL 4279695, at *3 (N.D. Cal. Sept. 16, 2008); or "if novel and difficult questions of first impression are presented," *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).  However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.*  Here, Capella has failed to show that there is substantial ground for difference of opinion on either question.

B.     First Question:  Collateral Estoppel of PTAB Invalidity Decision

The Court concluded that the PTAB's invalidation of claims in *inter partes* review precludes subsequent litigation over the validity of those claims in district court.  Order at 11. Capella argues that there are substantial grounds to disagree with the Court's conclusion that claims which are substantially identical to previously invalidated claims are also invalid because the PTAB only requires a preponderance of the evidence to invalidate a claim during *inter partes* review, whereas the district court requires clear and convincing evidence of invalidity.  Cert. Mot. at 2–3.  In other words, according to Capella, a fair-minded jurist could conclude that the PTAB's decision in an *inter partes* proceeding does not have preclusive effect on subsequent district court proceedings because the PTAB employs a more liberal evidentiary standard to invalidate claims than the district court.

This Court already rejected this legal standard argument in its Order, relying on the Federal Circuit's controlling decision in *XY v. Trans Ova Genetics*, which held that "an affirmance of an invalidity finding, whether from the district court *or the [PTAB]*, *has a collateral estoppel effect* on **all** pending or co-pending actions."  890 F.3d 1282, 1294 (Fed. Cir. 2018) (emphasis added). The Court also noted the Federal Circuit's previous decision in *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, which rejected the notion "that because different standards apply in a PTO reexamination and a validity proceeding before the district court, the patent's invalidation in a reexamination does not have collateral estoppel effect."  721 F.3d 1330, 1344 (Fed. Cir. 2013).  In fact, the panel in

4

1  *Fresenius* unequivocally held that "there is no basis for distinguishing between the effects of a
2  final, affirmed court decision determining invalidity and a final, affirmed PTO decision
3  determining invalidity on a pending litigation." *Id.*
4  　　To be sure, *Fresenius* did not rely on the doctrine of collateral estoppel; it held that
5  following cancellation of the claims, the patent owner "no longer has viable cause of action" in
6  any further proceeding. *Id.* at 1344–45. But *XY* did rely expressly on collateral estoppel. *See XY*,
7  890 F.3d at 1294 ("[W]e find that an affirmance of an invalidity finding, whether from a district
8  court *or the Board*, *has a collateral estoppel effect* on all pending or co-pending actions."
9  (emphasis added)). The argument raised by Capella was also advanced by Judge Newman in his
10 partial dissent from the majority's opinion in *XY*:

> [W]e need understand no more than the different standards of validity in the PTAB and the district court, the different burdens of proof, and the different standards of appellate review in this court, to appreciate that inconsistent decisions can be reached in the PTAB and the district court, all weighing heavily against estoppel. My colleagues' holding that in the event of conflict the administrative agency's decision "moots" the district court's decision, raises critical issues of constitutional balance.

16 890 F.3d at 1300 (emphasis added) (Newman, J., concurring in part and dissenting in part). The
17 majority flatly rejected that argument:

> We do not find, *as the Dissent states*, that "in the event of conflict the administrative agency's decision 'moots' the district court's decision." Dissent at 1301. Rather, we find that an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions.

21 *XY*, 900 F.3d at 1294 (emphasis added). Thus, contrary to Capella's argument, this holding in *XY*
22 is not dictum, but an express holding. This Court is not free to disregard that holding.
23 　　Capella cites no division in Federal Circuit authority on the applicability of collateral
24 estoppel to PTO *inter partes* review, particularly where the invalidation was upheld by the Federal
25 Circuit on appeal. At best, Capella also argues that other district courts have declined to follow
26 *Fresenius* and *XY*. But all of the district court cases that Capella cites are materially
27 distinguishable. For example, in *Papst Licensing GmbH & Co., KG v. Samsung Electronics Co.*,
28 the Eastern District of Texas explicitly recognized that *XY* stands for the proposition that "[a] final

5

judgment from the PTAB on the invalidity of a patent claim has an issue-preclusive effect on any pending actions involving that patent." 403 F. Supp. 3d. 571, 601 (E.D. Tex. 2019) (citing *XY*, 890 F.3d at 1294). That court did not apply collateral estoppel, however, because the invalidity issues before the district court were not identical and were not actually litigated in the prior PTAB *inter partes* proceedings. *Id.* ("The parties do not present, and the Court has not found, any binding precedent addressing whether a finding of invalidity under the preponderance of the evidence standard in an IPR collaterally estops invalidity arguments *for separate, unadjudicated claims* under the clear and convincing standard in a district court." (emphasis added)).

In *Sanofi-Aventis U.S. LLC v. Mylan GmbH*, another case relied on by Capella, the District of New Jersey denied Mylan summary judgment because the PTAB's *inter partes* decision invalidating the claims in Sanofi's patents did not preclude Sanofi from relitigating the patents' validity in district court. No. 17-9015 (SRC), 2019 WL 4861428, at *1 (D. N.J. Oct. 2, 2019). This holding is not a refusal to apply or follow *XY*, however, because the PTAB's invalidity decisions in *Sanofi-Aventis* were "pending before the Federal Circuit" at the time the court denied summary judgment, *id.*, and *XY* is very clear that only "*an affirmance of an invalidity finding*, whether from the district court or the [PTAB], has a collateral estoppel effect." 890 F.3d at 1294. Here, the Federal Circuit did affirm the PTAB's decisions invalidating the claims in the Original Patents.

In fact, the few district courts that have faced similar facts agree with this Court's conclusion that, under *XY* and *Fresenius*, the PTAB's invalidation of claims in *inter partes* review precludes subsequent litigation over the validity of those claims in district court. *See e.g.*, *Intell. Ventures 1, LLC v. Lenovo Grp. Ltd.*, 370 F. Supp. 3d 251, 257 (D. Mass. 2019) (concluding that, "under *XY* and *Fresenius*, PTAB decisions have a preclusive effect in district court"); *Fellowes, Inc. v. Acco Brands Corp.*, No. 10 CV 7587, 2019 WL 1762910, at *6 (N.D. Ill. Apr. 22, 2019). ("[I]n this case, the differing burdens do not defeat issue preclusion [because t]he Federal Circuit recently held that its affirmance of the PTAB's invalidity findings has an issue preclusive effect on all pending actions in district courts." (citing *XY*, 890 F.3d at 1294)).

Accordingly, Capella's motion to certify this question for interlocutory appeal under 28

6

U.S.C. § 1292(b) is **DENIED**.

C.  Second Question: Claims Substantially Identical to Previously Invalidated Claims Are Also Invalid

The Court also concluded that the PTAB's decision to invalidate certain claims in the Original Patents precludes Capella from asserting not only those claims, but all "substantially identical claims" in the Reissued Patents. Order at 9. In reaching this conclusion, the Court recognized that the Federal Circuit has not spoken directly on whether PTAB decisions have a collateral-estoppel effect in district court on substantially identical unadjudicated claims. Order at 5; *see also Intellectual Ventures*, 370 F. Supp. 3d at 257 (holding that "PTAB decisions have a collateral-estoppel effect in district court on unadjudicated claims that do not 'materially alter the question of invalidity'" even though "the Federal Circuit has not ruled directly on this precise question" (quoting *Ohio Willow Wood*, 735 F.3d at 1342)). While the precise issue has not been addressed, "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch*, 611 F.3d at 634 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). That is particularly true where, as here, there is ample precedent to support the Court's conclusion.

In its order, the Court cited *Ohio Willow Wood*, which established that a district court's summary judgment order invalidating certain patent claims precluded the patent owner from asserting "substantially similar" claims in a subsequent separate action. 735 F.3d at 1342. In doing so, the panel broadly held that collateral estoppel was not limited "to patent claims that are identical" to previously invalidated claims. *Id. See also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt. LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion."). "Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood*, 735 F.3d at 1342; *see also MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1377 (Fed. Cir. 2018) ("[T]he collateral-estoppel effect of an administrative decision of unpatentability generally requires the invalidation of related claims that present identical *issues* of patentability." (emphasis added)). In other words, "[i]f the differences

7

between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." *Id.* Therefore, under *Ohio Willow Wood*, the PTAB's decision invalidating claims in the Original Patents (the adjudicated claims) would also invalidate any claims that "do not materially alter the question of invalidity" in the Reissued Patents (the unadjudicated claims). *Id.* Because Capella admitted, at least for purposes of Cisco's motion for judgment on the pleadings, that the claims in the Reissued Patents are "substantially identical" to the claims in the Original Patents, the Court reached the obvious conclusion that the PTAB's decision invalidated both sets of claims.

   Capella concedes that to recover pre-issuance damages under 35 U.S.C. § 252, the invalidated claims and the reissued claims must be "substantially identical." *See R%8FL Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015). ("A patentee of a patent that survives reexamination is *only* entitled to infringement damages for the time period between the date of issuance of the original claims and the date of issuance of the reexamined claims *if the original and the reexamined claims are 'substantially identical'*" (emphases added) (quoting 35 U.S.C. § 252 (2012)). Capella now wants to walk back its concession and thread the very fine needle by contending that "original and amended claims can, on the one hand, be 'substantially identical' for purposes of § 252 but, on the other hand, ***not*** present identical issues of patentability, as required by collateral estoppel." Cert. Mot. at 13. This is because, according to Capella, the PTAB employs a "broadest reasonable interpretation" standard to construe patent claims for purposes of invalidity, *see, e.g.*, *Cuzzo Speed Techs. LLC v. Lee*, No. 15–446, 2016 WL 3369425, at *12 (U.S. June 20, 2016), whereas district courts apply the infringement standard articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Circ. 2015) (en banc) to determine if reissued claims are substantially identical to original claims.

   But as discussed above, the substantial interest in finality of PTO decisions and the teachings of *XY* and *Ohio Willow Wood* foreclose Capella's argument here. Capella cites no Federal Circuit or even district court authority justifying its attempt to avoid the binding effect of a final PTO ruling invalidating the substantially identical claims of a predecessor patent. Instead, Capella cites only to the PTAB's decision in *Google Inc. v. ContentGuard Holdings, Inc.*, PTAB

No. CBM2015-00040 (P.T.A.B. June 21, 2016) to support its argument. *See* Docket No. 53-1 ("*ContentGuard* Decision"). In that case, the patentee and challenger were engaged in parallel proceedings before the PTAB and the Eastern District of Texas. *Id.* at 4, 26. Applying the broadest reasonable interpretation standard, The PTAB invalidated Claim 1 of the patent in its institution decision because the term "meta-right" included "usage rights," which was anticipated by prior art. *Id.* at 24, 46. At the patentee's request, the PTAB then amended Claim 1 using the Eastern District of Texas's construction of the term "meta-right" in Claim 37, which included the term "usage rights." *Id.* at 53, 69. The PTAB also concluded that the amended Claim 37 was substantially identical to the original Claim 1 for purposes of § 252. *Id.* at 70-72. Therefore, Capella contends, *ContentGuard* stands for the proposition that an amended claim can be substantially similar to an invalidated claim but remain valid.

    *ContentGuard* is materially distinguishable because the patent owner in that case amended the invalidated claim *before* the PTAB issued a final written decision. Here, by contrast, Capella never tried to amend its claims using the process provided for by statute and outlined by the PTAB practice rules, instead appealing to the Federal Circuit—and then to the Supreme Court—*after* the PTAB issued its final written decision. *See* '368 IPR Order; '678 IPR Order; Docket No. 26-4 (Fed. Cir. Op.); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462 (2018). This is significant because, under federal regulations, Capella is "precluded from taking action inconsistent with" the Board's final decision, including "obtaining in any patent a claim that is not *patently distinct* from a *finally* refused or cancelled claim." 37 C.F.R. 42.73(d)(3)(i) (emphases added). By contrast, the patent owner in *ContentGuard* was not precluded from attempting to amend the invalidated claim, even if the proposed amendment was different from the PTAB's initial construction of that claim, because the PTAB had not issued its **final** written decision cancelling the original patent. In this case, Capella lost its appeal at every level, and now seeks a proverbial second bite of the apple.

    Not only would Capella's argument circumvent finality of the PTO rulings, allowing Capella to recover pre-issuance damages for infringement of substantially identical claims in the Reissued Patents, it would contravene the federal patent system's "carefully crafted bargain for

9

encouraging the creation *and disclosure* of new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151–52 (1989) (emphasis added). Had Capella disclosed the claims that eventually became the Reissued Patents when filing for Original Patent, the PTAB may not have cancelled the Original Patents in the first place. Its failure to do so, and instead deciding to await the final conclusion of the years-long litigation of the Original Patents before fully disclosing the scope of its claim in seeking reissuance, should not be awarded by permitting pre-issuance damages.

Capella, having failed to cite any authority substantiating its position allowing it a second bite of the apple, fails to establish "substantial ground for difference of opinion" as to whether claims herein which are "substantially identical" to claims that were previously invalidated by the PTAB are also invalid.

Accordingly, Capella's motion to certify this question for interlocutory appeal under 28 U.S.C. § 1292(b) is **DENIED**.

### III.  CONCLUSION

For the foregoing reasons, Capella's motion to certify this Court's order granting Cisco's motion for judgment on the pleadings for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **DENIED**.

This order disposes of Docket No. 53.

**IT IS SO ORDERED**.

Dated: December 8, 2020

_____
EDWARD M. CHEN
United States District Judge